THAYER v. SCHLEY et al.

(Supreme Court, Appellate Division, First Department. March 11, 1910.)

1. FRAUD (§ 41*)—ACTIONS—COMPLAINT.

A complaint in an action by a stockholder of a corporation against a firm for deceit, for false representations as to the financial condition of the corporation, and for fraudulently declaring dividends from the capital of the corporation, which alleges a false representation as to the surplus of the corporation over a dividend on its year's business, that two of the partners were directors of the corporation, that the two partners wrongfully participated in declaring dividends out of capital prior to the making of the representations, and that the dividends were declared fraudulently and in furtherance of a conspiracy of defendants to deceive the stockholders, including plaintiff, and to sustain the market price of the stock, will be treated as stating a cause of action for deceit only, in the absence of any evidence of a conspiracy to deceive the stockholders.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. §§ 36, 37; Dec. Dig. § 41.*]

2. FRAUD (§ 3*)—ELEMENTS OF FRAUD.

One suing for deceit must show the making of the false representations by defendant; that the representations were calculated and intended to influence plaintiff, and were made to him or brought to his knowledge; that the representations were false to the knowledge of defendant; and that plaintiff acted in reliance thereon, in good faith, and was deceived and damaged thereby.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 1; Dec. Dig. § 3.*]

3. EVIDENCE (§ 378*)—ACTS OF CORPORATIONS—GENUINENESS.

A letter, purporting to be a communication in reply to one received by a corporation, written on the business letter head of the corporation, and having affixed to it, by stamp, a fac simile of the signature of the secretary and general manager of the corporation, is prima facie genuine, and admissible in evidence as such.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1648, 1649; Dec. Dig. § 378.*]

4. PRINCIPAL AND AGENT (§ 115*)—AUTHORITY—REPRESENTATIONS.

Where a letter was sent to a firm, interested in the formation of a corporation, asking for information as to the condition of the corporation, which was outside of the firm business, but concerning which two partners were supposed to have peculiar knowledge, acquired as directors of the corporation, a letter containing representations stating the individual knowledge of the members of the firm, signed in the firm name by a stenographer employed by it, was not binding on the firm, for the stenographer could not make representations as to the knowledge of the partners except in so far as they, or any one of them, authorized him to do so and advised him of his or their knowledge.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 339–343; Dec. Dig. § 115.*]

5. FRAUD (§ 53*)—ACTIONS FOR FRAUD—EVIDENCE—ADMISSIBILITY.

In an action against partners for false representations as to the condition of a corporation of which two of the partners were directors,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

plaintiff may prove the actual condition of the corporation, after showing the representations, to prove their falsity.

[Ed. Note.—For other cases, see Fraud, Cent. Dig. § 49; Dec. Dig. § 53.*]

6. EVIDENCE (§ 352*)—BOOKS OF PRIVATE CORPORATIONS—ADMISSIBILITY.

The books of a corporation, which is not a party to an action against directors to recover damages for fraudulent representations as to the condition of the corporation, cannot be received as evidence of knowledge of the defendants of the contents of the books, without further evidence connecting them with the entries or showing knowledge thereof on their part.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1400; Dec. Dig. § 352.*]

7. TRIAL (§ 54*) — EVIDENCE — ADMISSIBILITY — RESTRICTION TO PARTICULAR PURPOSE.

Where, in an action against partners for fraudulent representations as to the condition of a corporation of which two of the partners were directors, the court, in its charge, suggested the issues whether the books of the corporation were fraudulently made up or whether dividends declared by the corporation were fraudulently declared, the general admission of the books without limiting them to prove the actual condition of the corporation to show the falsity of the representations proved, was prejudicial error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 126–128; Dec. Dig. § 54.*]

8. TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO ISSUES.

Where, in an action against partners for fraudulent representations as to the condition of a corporation of which two of the partners were directors, there was no evidence of a conspiracy between the defendants to deceive the stockholders, including plaintiff, by declaring dividends from capital, a charge as to the liability to stockholders of the directors of the corporation who declared dividends out of capital and as to the relation of trust which the directors of a corporation occupy towards it and the stockholders, was outside of the issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 607; Dec. Dig. § 252.*]

9. EVIDENCE (§ 352*)—CORPORATE PROCEEDINGS—AGAINST WHOM ADMISSIBLE.

In an action against partners for fraudulent representations as to the condition of a corporation of which two of the partners were directors, the· minute books of the directors as to meetings, at which neither of the defendants were present, were inadmissible without proof of knowledge of defendants of what transpired at the meetings.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 1400; Dec. Dig. § 352.*]

Appeal from Trial Term, New York County.

Action by Russell Thayer against Grant B. Schley and others. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. Reversed, and new trial ordered.

· See, also, 58 Misc. Rep. 352, 110 N. Y. Supp. 1104.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, MILLER, and DOWLING, JJ.

Julius F. Workum, for appellants.

A. Leo Everett, for respondent.

DOWLING, J. The American Malting Company was incorporated under the laws of the state of New Jersey in September, 1897, with

a large capitalization, and the firm of Moore & Schley had been interested in the formation of the company. The plaintiff, a resident of Philadelphia, in December, 1898, gave an order to Ervin & Co. brokers in that city, to buy for him 700 shares of the preferred stock of the company, which order was executed through the firm of Moore & Schley of New York, of which firm Ervin & Co. were the Philadelphia correspondents, at prices ranging from $83.50 to $85 per share. The stock was then carried by Ervin & Co. with other stocks on margin. The plaintiff was never personally known to Moore & Schley in the transaction. On July 18, 1899, the plaintiff, still being the owner of the stock held by his brokers on margin, became disturbed because its market price was steadily declining, although it was a 7 per cent. dividend paying stock, and knowing that the firm of Moore & Schley had been the promoters of the company and having confidence in them, he told his brokers, Ervin & Co., that he would like to find out from Moore & Schley the real condition of the company, whereupon Ervin & Co. wrote the following letter to the firm of Moore & Schley:

"Philadelphia, Pa., July 18, 1899.

"Messrs. Moore & Schley, 80 Broadway, New York—Dear Sirs: We have been asked the following questions by a stockholder of the American Malting Company, which we are unable to answer. Will you kindly give us as soon as possible the information: Amount of capital stock. Amount paid on same. What properties does the company own? In what condition was the company at its last annual meeting?

"We will thank you for any general information you can give us on this subject.　　　Very truly yours,　　　　　　　　[Signed]　Ervin & Company."

In reply, Moore & Schley are claimed to have written and sent the following letter:

"Moore & Schley, Bankers, 80 Broadway.

"John G. Moore.
"Grant B. Schley.
"Elverton R. Chapman.
"Henry G. Timmermann.
"George F. Casilear.

"New York, July 19th, 1899.

"(Dictated.)

"Messrs. Ervin & Company, Philadelphia, Pa.—Gentlemen: Referring to your letter of the 18th instant, we have to say that the American Malting Company does not issue a statement of its business, but we can say that the capital stock of the company is as follows: Preferred, $14,440.000; common, $14,500.000. The company owns some thirty or forty different malting properties scattered throughout the United States.

"We understand that the company's surplus over its dividend on preferred stock on its year's business was over $225,000, and that they are doing much better this year.

"Truly yours,　　　　　　　　　　　　　　Moore & Schley.
　　　　　　　　　　　　　　　　　　　　　　"De Gaugue."

This letter was communicated by Ervin & Co. to the plaintiff, and plaintiff claims that, relying upon the statements contained in this last letter, he did not sell his preferred stock, as he had intended, but continued to carry the same until eight months afterwards, when its market price having steadily declined he instructed his brokers to sell it, which they subsequently did at a price which entailed a loss to the

plaintiff of $31,500, which is the difference between the market price at the time he received his knowledge of the Mocre & Schley letter and the time when he gave the instructions to sell; for which amount with interest he had a verdict against the defendants who are the surviving members of the firm of Moore & Schley. The particular representation, upon the falsity of which the plaintiff predicates his right to recovery, is to be found in the concluding paragraph of the letter, namely:

"We understand that the company's surplus over its dividend on preferred stock on its year's business was over $225,000, and that they are doing much better this year."

This action is brought upon the theory that the sending of the letter of July 19th was a firm act for which all of the members of the firm still living were sought to be held liable, although service was had upon only two of the defendants, namely, Schley and Chapman; the remaining defendants are no longer partners in the firm, although they were such at the time of the writing of the letter. The defendant Schley was a director of the company from November or December, 1898, to October 4, 1899; and the defendant Chapman was treasurer and a member of the executive committee of seven, and also a director in the company from October, 2, 1897, to November 9, 1899.

The complaint herein apparently sets forth two causes of action, although it is apparent from the allegation, as to the amount of the damage sustained, that the cause of action depends alone upon the misrepresentations claimed to have been contained in the letter; but in the complaint it is set forth, not only that this letter was sent, that its contents were untrue, and that it was sent for the purpose of deceiving and did deceive the plaintiff to his damage, but also what is apparently a separate cause of action, although not separately stated or numbered, in which the defendants Schley and Chapman are claimed to have wrongfully caused, and participated in causing, the declaration of dividends on the preferred stock from the capital, and not from the profits of the malting company, which dividends were declared April 15, 1898; July 15, 1898; October 15, 1898; January 15, 1899; April 15, 1899; July 15, 1899—all prior to the writing of the letter in question. The sole connection of the other defendants with the alleged wrongful acts of the two directors in relation to these dividends is to be found in the allegation that they were made "fraudulently and in furtherance of the scheme and conspiracy of defendants and said Moore as partners, to deceive the stockholders, among them the plaintiff, and to sustain the market price of the preferred stock." The plaintiff further alleges in his complaint that, relying not only upon the false and fraudulent statement communicated to him through Ervin & Co., but also upon the fraudulent and illegal declarations of dividends, and by reason of both of these causes, he was induced to retain his stock, although, if he had known the true condition, he would have sold it immediately. It is enough to say, so far as the suggestion is made in the complaint of any conspiracy for deceiving the stockholders, that there is absolutely no proof adduced to sup-

port it, nor is there any testimony whatever connecting the defendants Timmermann and Casilear with any of the declarations of dividends. While these allegations with respect to the declarations of dividends might have been treated as surplusage and would not have involved the cause of action for deceit which still remained alleged, no doubt their presence in the complaint was directly responsible for some of the confusion which arose as to exactly what issue was before the court for determination.

Treating this as an action in deceit against the firm of Moore & Schley, wherein a firm liability is sought to be established, it was incumbent upon the plaintiff to establish the essentials of such an action, which are: First. The making of the false representations by the defendants. Second. That such representations were calculated and intended to influence the plaintiff and were made to him or brought to his knowledge. Third. That the representations were false to the knowledge of the defendants. Fourth. That the plaintiff acted in reliance upon them in good faith,* and was deceived and damaged thereby. This is not a case of firm responsibility sought to be established by law for acts which merely referred to some detail of firm business; but has to do with a situation which arose when information was apparently sent from a firm as to matters outside the firm business, concerning which two of its members were supposed to have peculiar knowledge, which they had acquired in a representative capacity as directors of another enterprise.

Instead of a letter sent by a member of the firm, plaintiff produces one, which upon its face, is signed by a third party whose authority is not shown, and who, upon this record was simply a stenographer in the firm employ. Conceding the genuineness of both letters, there is no rule invoked here under which the reply letter becomes binding on the individual partners of the firm. The cases in which a reply letter has been admitted in evidence have never gone beyond holding that where a letter purports to be a communication in reply to one received, is written upon business letter heads of a corporation, and to it was affixed by stamping a fac simile signature of its secretary and general manager, that then the circumstances make a prima facie case in favor of the genuineness of the letter, which justifies its submission to the jury, who are the ultimate triers of its genuineness. Nat. Accident Society v. Spiro, 78 Fed. 778, 24 C. C. A. 334; Lancaster v. Ames, 103 Me. 87, 68 Atl. 533, 17 L. R. A. (N. S.) 229, 125 Am. St. Rep. 286. But even conceding the genuineness of the signature of De Gaugue, that does not establish the liability of the defendants. What the latter, which purports to be a firm letter, undertakes to do, is to state the individual knowledge or belief of the members of the firm, for, obviously, the firm itself could have no knowledge save that of its members. This being so, it is obvious, as well, that De Gaugue was in no position to make representations as to the knowledge or belief of the members of the firm, except in so far as they or any one of them authorized him to do so and advised him of his or their knowledge or belief. Upon no theory could a stenographer in a firm, employed without either general or special authority shown,

be held to have power to bind the firm by representations as to the knowledge or belief of its members. In this case, De Gaugue was not called as a witness, and there is no proof of the extent of his authority and nothing in the record from which authority can even be inferred. It is clear, therefore, that in the absence of such proof the plaintiff cannot recover, when the defendants are not shown to have had any knowledge whatever either of the sending or of the existence of the letter.

The books of the American Malting Company were received in evidence, apparently upon the theory that the defendants should have known that the representations claimed to have been made were false, because as directors they had access to the books. While it would have been competent for the plaintiff to have proved the actual condition of the company, after he had established the making of the representations by defendants, in order to show that the representations were false, still, it was necessary to limit their receipt to that purpose, and not admit them in order to charge defendants, who were directors, with knowledge thereof. It is now well established that the books of a corporation which is not a party to the action cannot be received as evidence of knowledge on the part of the defendants of their condition, without some further evidence connecting them with the entries or showing knowledge thereof on their part. Rudd v. Robinson, 126 N. Y. 113, 26 N. E. 1046, 12 L. R. A. 473, 22 Am. St. Rep. 816; Powell v. Conover, 75 Hun, 11, 26 N. Y. Supp. 1028. As was stated in the former case, "there is no principle of law by which a director can be charged with knowledge of the entries in the books of a corporation which is not equally applicable to its stockholders." That confusion as to the real issue arose, and prejudice to the defendants was done by the general admission of these books, appears from the charge by the learned court below, when among the issues which he suggested to the jury as being present in the case were these:

"Were the books of the company fraudulently made up? Were dividends fraudulently made? Was the plaintiff deceived?"

Furthermore it was error to charge the jury with respect to the liability to stockholders of the directors of the corporation who declared and paid dividends out of the capital and not from the profits, as well as to charge them with respect to the relation of trust and confidence which directors of a corporation occupy towards the company and the stockholders. These matters apparently owed their presence in the case to the unnecessary allegations of the complaint, but they had absolutely nothing to do with the one cause of action for deceit, upon which plaintiff's recovery is sought to be based.

It was also error to admit in evidence the minute books of the directors of the malting company as to meetings at which neither of the defendant directors was present, without any proof of knowledge on their part of what transpired at these meetings. There are other errors assigned which need not be discussed, as those already set forth require that the judgment and order appealed from should be reversed and a new trial ordered, with costs to appellants to abide the event. All concur.