THE CONTINENTAL INSURANCE COMPANY and Another, Appellants, *v.* JOSEPH MERCADANTE, Respondent, Impleaded with ALVIN W. KRECH and Others, Defendants.

First Department, December 23, 1927.

Fraud and deceit — action to recover damages based on retention of securities through fraudulent representations of defendants — securities were purchased by plaintiff with knowledge on part of defendants that they were for investment only — plaintiffs were undecided whether to sell or not and were induced by defendants' false representations not to sell — securities became worthless — cause of action stated.

The plaintiff, in this action to recover damages for fraud and deceit, alleged that it purchased certain securities for investment only upon the recommendation of the defendants who pronounced the securities good investments; that its practice was to sell securities held by it if at any time it appeared that the securities were not first class; that such facts were known to the defendants; that the defendants for their own gain falsely represented to the plaintiffs that the corporation issuing the securities was solvent and earning money, and that in reliance upon such representations the plaintiffs, though the securities could have been sold for a substantial price, decided to retain the securities for invest-

First Department, December, 1927.    [Vol. 222

ment; that at that time the plaintiff was undecided whether to sell or not, and that later the securities became worthless.

The complaint states a good cause of action for, as alleged, the plaintiff's indecision to sell at a time when it might have sold at a good price was through defendants' false representations changed to decision not to sell, and defendants' false representations were made for that purpose in order to aid them in maintaining the market for the securities in question.

APPEAL by the plaintiffs from an order of the Supreme Court, entered in the office of the clerk of the county of New York on the 24th day of March, 1927, and also from a judgment entered in pursuance of said order on the 26th day of May, 1927.

*M. E. Harby,* for the appellants.

*Charles F. Quantrell* of counsel [*D. Roger Englar* with him on the brief; *Bigham, Englar & Jones,* attorneys], for the respondent.

PROSKAUER, J. The plaintiffs appeal from an order and judgment dismissing the complaint as to the defendant Joseph Mercadante for insufficiency.

In the first cause of action each plaintiff has alleged substantially that it was an insurance company; that its intention and practice was at all times to buy and retain only bonds which were investments, as distinguished from speculations, and which could be safely retained to maturity; that this was at all times known to the defendants; that it purchased bonds in reliance upon representations of the defendants which gave them this character; that after the purchase of the bonds its intention, to the knowledge of the defendants at all times, was to sell the bonds if it appeared that the obligor's business and financial condition would not justify the plaintiff in retaining the bonds till maturity, or that the obligor was losing money substantially in its business or suffering impairment of its solvency; that with this knowledge the defendants, for their own gain and to enable them to market similar bonds held by them, made at various times essentially false representations as to the earnings and solvency of the obligor; that these representations were made with the intention that the plaintiff should rely on them in retaining and not selling their bonds; that at the time these representations were made the bonds could have been sold for a substantial price; that in reliance upon these misrepresentations the plaintiffs held their bonds, and in further reliance upon similar misrepresentations exchanged them at defendants' request for other securities which have become substantially worthless.

There are two other causes of action in which these facts are substantially repleaded in different legal form. If, as we hold, the first cause of action be good, the others necessarily are. It is

essential here, therefore, to consider only the first cause of action.

The gravamen of the action is for fraud in inducing, not the purchase of the bonds, but their retention after purchase. Nor is it claimed that this retention was induced by the fraudulent representations at or after a time when the plaintiffs had affirmatively decided to sell the bonds. The plaintiffs do not contend that the alleged fraud of the defendants shifted them from the active intent to sell to the conclusion to retain. They rest upon the proposition that they suffered actionable wrong when the defendants by fraudulent misrepresentation transmuted their indecision whether to sell or keep into a damaging decision to retain.

It has been held that where a plaintiff had affirmatively decided to sell securities and was induced, to his damage, to retain them by defendant's fraudulent misrepresentations, he may recover his loss. (*Fottler* v. *Moseley,* 179 Mass. 295.) In that case, HAMMOND, J., writes: " It is a little difficult to see precisely what is meant by the contention that ' refraining from action is not acting upon representation.' If by refraining from action it is meant simply that the person defrauded makes no change but goes on as he has been going and would go whether the fraud had been committed or not, then the proposition is doubtless true. Such a person has been in no way influenced, nor has his conduct been in any way changed by the fraud. He has not acted in reliance upon it. If, however, it is meant to include the case where the person defrauded does not do what he had intended and started to do and would have done save for the fraud practiced upon him, the proposition cannot be true. So far as respects the owner of property, his change of conduct between keeping the property on the one hand and selling it on the other, is equally great, whether the first intended action be to keep or to sell; and if by reason of fraud practiced upon him the plaintiff was induced to recall his order to sell, and, being continuously under the influence of this fraud, kept his stock when, save for such fraud, he would have sold it, then with reference to this property he acted upon the representation within the meaning of the rule as applicable to cases like this."

That decision is predicated upon the assumption that the defrauded person did not do (1) " what he had intended; " (2) what he had " started to do; " and (3) what he " would have done save for the fraud practiced upon him." All three of these elements are lacking in the instant case. There is no allegation that the plaintiffs unqualifiedly intended to sell, or, indeed, that they would have sold if the defendants had remained silent. Nevertheless the opinion is authority for the proposition that inaction, quite as much

as action, induced by fraud, may sustain recovery. And this proposition has support in other decided cases.

Thus, in *Continental Nat. Bank* v. *Nat. Bank of the Commonwealth* (50 N. Y. 575) the plaintiff's teller had stated that a certification purporting to have been made by his bank was valid. Before this statement was made to the representative of a third party valuable property had been delivered by this party. It could have taken steps to recover this property had it been informed that the certification was a forgery. Acting upon the misrepresentation it refrained from taking such action. It was held that the plaintiff was estopped from asserting the invalidity of the certification. FOLGER, J., writes (p. 585): " It must be that the conduct of men, which may be influenced by the declarations of those with whom they deal, is not confined to that which is shown by affirmative and positive acts following upon and induced by those declarations. Conduct is not alone that which is active, positive and affirmative. * * * It is as bad to fail to recover property gone, when with the knowledge of an existing fact it might have been retrieved, as it is to lose it. And so it is as damaging to rely in quiet upon an untrue statement, to the neglect of using the means of recovery, as it is to rely upon an untrue statement, and by action thereon meet with loss irreparable. * * * When an act produces conduct from which flows injury, it cannot matter whether that conduct be affirmative or negative, active or quiescent." To the same effect are *N. Y. Land Imp. Co.* v. *Chapman* (118 N. Y. 288); *Rice* v. *Manley* (66 id. 82).

We conclude, therefore, that the plaintiffs cannot be denied redress because their conduct was inaction rather than action.

We come then to the more difficult question whether this inaction can be said to have been caused by the false representations in view of the circumstance that the plaintiffs had not previously determined upon action. In *Thayer* v. *Schley* (137 App. Div. 166) the plaintiff owned stock of a corporation; he caused inquiry to be made of the defendants as to the financial condition of this corporation; in response to this inquiry he received false information. The allegation of the complaint was that by reason of the false representations " he was induced to retain his stock, although if he had known the true condition, he would have sold it immediately." A judgment for the plaintiff was reversed because of lack of proof of authority in the employee of the defendants who made the false representations. The complaint, however, was not dismissed and a new trial was ordered. The court thus apparently held that a cause of action, substantially identical with the one alleged in the instant case, was there stated.

In *Deyo* v. *Hudson* (225 N. Y. 602) the plaintiffs were undecided whether to retain in their law firm a partner who had misused trust funds in speculations conducted through the brokerage office of the defendants. It was charged in the complaint that the defendants falsely misrepresented an intent to have no further dealings with this defaulting partner and that in reliance thereon the plaintiffs retained him in their firm. Here, also, there was a decision adverse to the plaintiffs upon the ground of lack of proof of authority in the person who made the misrepresentations. Upon the substantive question of law, however, POUND, J., writes (p. 612): " The inference is permissible that Mitchell uttered an unqualified falsehood when he said that he would notify Deyo if Carver resumed trading with the defendants; he uttered it with a fraudulent intent and plaintiffs acted thereon. If injury resulted, with which defendants may be charged, the action can be maintained."

In that case, as here, there was initial indecision and the defendants unsuccessfully urged that the plaintiffs might have followed the same ultimate course even without the misrepresentations.

In *Smith* v. *Kay* (7 H. L. Cas. 750, 770) Lord CRANWORTH writes: " It does not lie in the mouths of these persons to say what he would have done if they had not concocted the fraud, and if there had never been any deception at all practised. That is not the question. The question rather is, what this young man would have done if he had known all that had really taken place."

Similarly in *Traill* v. *Baring* (4 DeG., J. & S. 318, 330), Lord Justice TURNER writes of this contention: " Had this representation of what had occurred and of the change of intention on the part of the defendants been communicated to the plaintiffs, it is impossible to say what course the plaintiffs would have pursued — whether they would or would not have accepted the policy. They might have done so; but it is equally clear that they might not; and we cannot say whether they would or would not; but it was to them that the communication should have been made, in order that they might exercise their option upon the subject."

Kerr on Fraud and Mistake (5th ed.), 46, accords.

In *Smith* v. *Duffy* (57 N. J. Law, 679) the plaintiff recovered damages for false representation inducing the purchase of stock, not upon the basis of the purchase, but upon the basis of the retention of the stock for a long period in reliance upon the original misrepresentations. DIXON, J., writes (at p. 690): " The loss, therefore, actually resulting from the fraud, and which must be presumed to have been within the contemplation of the defendant, was the difference between the plaintiff's investment and the value

of the stock after the fraud ceased to be operative — that is, after the failure of the company.    In the ascertainment of this difference, the market price of the stock at the time of the sale, or during the year succeeding, or at any time before the failure, was of no importance."

In *National Bank of Dakota* v. *Taylor* (5 So. Dak. 99; 58 N. W. 297) the court writes: " It would seem strange law that a party may safely accept and rely upon the statements of him with whom he is dealing without investigation, and make and complete the contract solely upon the strength of his reliance upon their truth, but that, when he has so concluded the contract, he can no longer rely upon the truth of such representations, but that he must then investigate, and see if they are true.    He has the same right to rely upon the statements after, as before, the consummation of the contract." (See, also, *Hindman* v. *First Nat. Bank,* 112 Fed. 931, 935, 936; certiorari denied, *sub nom. First Nat. Bank* v. *Hindman,* 186 U. S. 483; *Goodwin* v. *Wilbur,* 104 Ill. App. 45, 53.)

The purport of the decisions last cited is that the original misrepresentation is treated as recurring and continuing, and that the plaintiff can, therefore, sue for the damages occasioned by his inaction even though he had not previously determined upon sale.

The defendants intended that their misrepresentations should cause the plaintiffs to keep their bonds, desist from further inquiry and remain passive.    The motive for their conduct was their own gain.    The law should not countenance a standard of business morality which would permit vendors of securities to promote a market by publication of false representations and escape the consequence thereof by the contention that the owners of these securities might well have retained them even though the false representations had not been made.    Where the damage is caused by inducing plaintiff's inaction, it is necessarily more difficult to allege or prove causation than in those cases where act've conduct is induced.    Indeed, in all fraud cases the element of proximate cause is more impalpable than in negligence cases because we are dealing with the plaintiff's state of mind.    The defendants cannot, therefore, require the same exact proof of causation.    In the negligence case there is no intent on the part of the defendant to produce damaging result.    In the fraud case the defendant dishonestly intends to produce such result.    Where he accomplishes his dishonest purpose and his misrepresentation can fairly be said to have contributed to this result, he should compensate for the loss which he intended to cause and which by fraudulent conduct he induced.    The test should not be whether the defrauded party might conceivably still have lost had the fraud not been practiced,

but whether there was a reasonable probability that the fraud actually accomplished the result it was intended to bring about. Conceivably plaintiffs might have retained their bonds by reason of their own inability to discover the true facts for themselves. Actually, lulled into passivity by the fraud, they lost the opportunity to investigate. Plaintiffs have shown *prima facie* legal causation when they show that the fraud has secured the contemplated result. " An act which in no degree contributed to the result in question cannot be a cause of it; but this, of course, does not mean that an event which *might* have happened in the same way though the defendant's act or omission had not occurred, is not a result of it. The question is not what would have happened, but what did happen." (Beale Proximate Consequences of an Act, 33 Harv. L. R. 633, 638.)

It may be that this holding extends the content of what has thus far been defined as actionable deceit. If this be so, we think the extension is based upon a proper commercial morality and the logical import of the precedents that the purpose of the law is, wherever possible, to afford a remedy to defeat fraud.

The judgment and order should be reversed, with costs, and the motion denied, with ten dollars costs, with leave to the defendant to answer on payment of said costs.

DOWLING, P. J., MERRELL, FINCH and McAVOY, JJ., concur.

Judgment and order reversed, with costs, and the motion denied, with ten dollars costs, with leave to the defendant to answer within twenty days from service of the judgment to be entered on the order of this court, upon payment of said costs.