[Civ. No. 7417. Second Appellate District, Division One.—September 8, 1932.]

JOSEPH N. McFATE, Jr., Appellant, v. BANK OF AMERICA OF CALIFORNIA, etc., Respondent.

W. I. Gilbert and Troy Pace for Appellant.

Freston & Files and Ralph E. Lewis for Respondent.

TAPPAAN, J., *pro tem.*—This appeal is from a judgment of dismissal entered after an order sustaining defendant's demurrer to plaintiff's complaint. The demurrer was sustained by the trial court with leave to the plaintiff to amend, but plaintiff elected to stand on his complaint, whereupon, by stipulation setting forth such election and reserving to plaintiff the right to appeal, the order was entered dismiss-

ing the action. The sole question presented upon this appeal is whether the original complaint states a cause of action. Defendant's demurrer was general. The complaint alleges the corporate existence of defendant bank and its predecessor banks, of whose various rights and liabilities defendant bank is alleged to have become the successor. Where, hereafter in this opinion reference is made to defendant bank, it is deemed to include as well the banking institutions which preceded defendant in this transaction, and to whose rights and liabilities it has succeeded. Then follow allegations that one Zuckerman owned a certain apartment house; that plaintiff owned a ranch; that one Gordon acted as Zuckerman's agent and broker to negotiate a sale or exchange of his apartment house to plaintiff. It should be noted that neither Zuckerman nor Gordon are parties to this action. The complaint then alleges that Zuckerman made representations as to the value of his property to plaintiff, and stated that it was encumbered with a mortgage in the amount of $100,000, held by defendant bank, and that said bank renewed the loan from year to year and in the future would so renew the loan. The next allegation is to the effect that plaintiff in reliance upon the said representations of Zuckerman entered into a written agreement of exchange of his (plaintiff's) ranch for Zuckerman's apartment house, subject to a mortgage of $100,000, held by defendant bank. Under the terms of this agreement, it is alleged that a provision was made for the creation of an escrow by the parties with defendant bank to consummate the exchange. There is then an allegation that the representation as made by Zuckerman that there was a mortgage in the sum of $100,000 on the apartment house held by defendant bank was false and untrue; that the reasonable mortgage value of said property was $68,000; that defendant bank made an appraisal of said property at $132,000, and offered to loan Zuckerman $75,000 on the same; that Zuckerman informed defendant bank that he was about to exchange the property with plaintiff for his ranch, subject to the mortgage of $100,000 held by defendant bank, and defendant bank agreed to receive a note and mortgage for that amount and credit to Zuckerman's account the moneys received therefrom, and that such a mortgage was duly made and placed of record. The next allegation is as follows: ''That thereby and as a result of such plan and of such actions upon the part of the Mer-

chants National Trust and Savings Bank (a predecessor in interest of defendant bank) the plaintiff was induced and caused to believe that the Knickerbocker Apartments were of the value that had been represented to plaintiff by the said H. Lew Zuckerman and S. E. Gordon, and that it possessed a *bona fide* loan value of $100,000, and said plaintiff was thereby induced to consummate such exchange, when otherwise and had he been advised of the true facts he would not have done so.'' Then follows an allegation that plaintiff had been damaged in the sum of $114,000, and a prayer for judgment as against defendant bank for that sum. Defendant's demurrer, as hereinbefore stated, was that the complaint did not state facts sufficient to constitute a cause of action. Appellant in his argument, as presented here, tacitly admits that the alleged cause of action set up in his complaint falls short in some of its material essentials of stating a cause of action for *actual fraud,* as defined in our law (Civ. Code, sec. 1572), but advances the theory that it does state a cause of action for *constructive fraud.* Constructive fraud is defined by section 1573 of the Civil Code as follows: ''Constructive fraud consists: 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; . . . ''

It is appellant's contention that defendant bank by becoming the escrow-holder thereafter stood in a fiduciary relationship to plaintiff, and owed to him a *duty* to disclose all facts that would materially tend to cause him to consummate the exchange upon the basis proposed by Zuckerman. Both appellant and respondent in their briefs devote considerable space to discussion of the question of the status of escrow-holders and their obligations to their principals. It would seem, from an examination of the facts, as alleged in the complaint, that there is a far broader principle involved than that which would arise solely from defendant's acts as escrow-holder. Plaintiff's cause of action, as stated in his complaint, is that defendant bank became the record mortgagee in a mortgage upon property for which plaintiff was about to exchange certain property then owned by him, and that this mortgage so accepted and recorded by defendant bank was in fact taken for the benefit and credit of the

owner of the property seeking the exchange with plaintiff. Defendant is not alleged to have made any statement or representation in regard to this mortgage to plaintiff, other than that it acted in the capacity of escrow-holder while the exchange was made. There is an allegation that defendant had notice that it was necessary that there be a mortgage of the amount stated and held by it to induce plaintiff to complete the exchange. The existence of this mortgage, its parties and terms, clearly appear as one of the material inducements which secured plaintiff's consent to the completion of the existing exchange agreement. The cause of action thus alleged fails to aver facts which amount to actual fraud, nor are there facts stated which would directly show a violation of the express terms of the trust relationship alleged to have existed. ▌ In the last analysis the question here presented would seem to be this: Does the term "breach of duty" as found in the definition of constructive fraud in section 1573 of our Civil Code include within its scope cases where one has aided in the creation of or has created an untrue condition or statement of material fact, with knowledge that the condition or statement would be made use of in inducing a known person to continue or complete a contractual obligation, and which in fact did have that result and in fact did cause detriment to the person so induced to act? It will be noted that if the facts alleged in the complaint in the instant case are construed as sufficient to allege a "breach of duty", the other essential elements necessary to constitute constructive fraud, as defined in the code section just referred to, are adequately alleged in the complaint. Counsel in their briefs have not cited any authorities having a direct bearing upon this question, nor has an examination of our reported cases disclosed any such authority.

It may fairly be argued that "breach of duty" as made use of in the section of the code quoted, when considered with the context of the paragraph, means but the correlative for injury suffered by one and caused by the participation or co-operation in the wrong by another. The cases of *Blair* v. *Guarantee Title Co.*, 103 Cal. App. 260, 270 [284 Pac. 719], and *Mox, Inc.*, v. *Woods*, 202 Cal. 675, 677 [262 Pac. 302], would seem to sustain this conclusion.

The defendant in accepting the mortgage is alleged to have acted in the capacity of agent for the mortgagor, and would be liable to plaintiff for its wrongful acts. (Civ. Code, sec. 2343.) Before accepting employment as agent for plaintiff, defendant was under an obligation to disclose to plaintiff any adverse interest it may have had. This it failed to do before accepting the escrow. This was clearly a "breach of duty" within the intention of the section. There is no merit in the argument advanced that the plaintiff suffered no detriment. A party to a contract is entitled, under the circumstances of the instant case, to know the party with whom he contracts. The act of the defendant debarred him from this information. Under somewhat similar circumstances to those present here, complaints have been upheld in the following cases: *Continental Ins. Co.* v. *Mercadante*, 222 App. Div. 181 [225 N. Y. Supp. 488]; *Doyle* v. *Chatham & Phenix Nat. Bank*, 253 N. Y. 369 [71 A. L. R. 1405, 171 N. E. 574]; *Ultramares Corporation* v. *Touche*, 255 N. Y. 170 [74 A. L. R. 1139, 174 N. E. 441].

Nothing in this opinion contained is to be construed as approving or disapproving the measure of damages as alleged in the complaint. "We are not concerned with the question of the ability of plaintiff to prove the allegations of the complaint, and this would be true even though we could foresee insuperable difficulties in such proof. We are merely to pass upon the sufficiency of the complaint as a pleading." (*Mox, Inc.*, v. *Woods, supra*, at p. 676.)

For the reason herein stated, the judgment entered herein is reversed.

Conrey, P. J., and York, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on October 4, 1932, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on November 7, 1932.