994 So.2d 517 (2008)
David GOLDIN, Scott Hoffman, David Jonas, and Louis Person, Appellants,
v.
SALOMON SMITH BARNEY, INC., Appellee.
No. 3D07-3318.
District Court of Appeal of Florida, Third District.
November 19, 2008.
*518 Beggs & Lane and David L. McGee and Steven R. Griffin, Pensacola, for appellants.
Greenberg Traurig and Edward G. Guedes and Brigid F. Cech Samole, Miami, for appellee.
Before WELLS, SHEPHERD, and ROTHENBERG, JJ.
ROTHENBERG, J.
The plaintiffs, David Goldin, Scott Hoffman, David Jonas, and Louis Person ("the plaintiffs"), appeal from an order dismissing their Second Amended Complaint against Salomon Smith Barney, Inc. ("SSB") with prejudice. On de novo review, Morin v. Fla. Power & Light Co., 963 So.2d 258, 260 (Fla. 3d DCA 2007), we affirm because: (1) under applicable New York law, the plaintiffs failed to demonstrate justifiable reliance on SSB's alleged fraudulent misrepresentations; and (2) the plaintiffs failed to demonstrate that SSB had a duty to disclose any material facts which SSB allegedly omitted or concealed. The following factual allegations, which we accept as true, appear in the Second Amended Complaint.
In 1998, the plaintiffs sold their website development company to Winstar Communications, Inc. ("Winstar"). The plaintiffs *519 received eighty percent of the sale price in Winstar stock, and became Winstar vice presidents.
In 1999, Winstar employed SSB to help with a number of financial transactions. Those transactions generated substantial fees for SSB. The SSB/Winstar investment banking relationship created incentives for SSB and its analysts to encourage potential stockholders to buy Winstar stock, and to encourage those who owned Winstar stock to hold it. Accordingly, through a series of communications with the general public and with Winstar employees and shareholders, SSB analysts overstated the investment quality of Winstar stock.
Winstar management told its employees that the financial forecasts of SSB analyst Jack Grubman ("Grubman") could be trusted above all others. Beginning in January 2000, the plaintiffs participated in quarterly conference calls with Grubman, who consistently reiterated the positive outlook of Winstar stock. The plaintiffs relied on these communications in purchasing and holding Winstar stock. Despite SSB's public stance vis-à-vis Winstar, in early 2001, analysts were privately rating Winstar stock at more negative levels. Winstar filed for protection from its creditors under the Bankruptcy Code in April 2001, and the value of the plaintiffs' holdings collapsed.
The plaintiffs filed the first complaint against SSB in June 2003, alleging that SSB fraudulently induced the plaintiffs to hold and not sell their Winstar stock in spite of financial realities. The parties agreed, and the trial court found, that the substantive law of New York governs the allegations in the complaints. After two dismissals without prejudice, the plaintiffs filed the Second Amended Complaint in August 2007. The trial court dismissed this complaint with prejudice, finding that under New York law, the plaintiffs' "holder" claim cannot stand for failure to allege a sufficiently direct communication between SSB and the plaintiffs, and failure to demonstrate that SSB had a duty to disclose any material information it may have withheld. This appeal followed.

ALLEGATIONS OF AFFIRMATIVE MISREPRESENTATIONS
At the outset, we note that New York recognizes common law claims where investors are fraudulently induced to retain securities in reliance on a defendant's affirmative misrepresentations. See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC, 446 F.Supp.2d 163, 204 (S.D.N.Y.2006); In re WorldCom, Inc. Sec. Litig., 382 F.Supp.2d 549, 559 (S.D.N.Y.2005); Cont'l Ins. Co. v. Mercadante, 222 A.D. 181, 225 N.Y.S. 488 (N.Y.App.Div.1927).
Here, the plaintiffs argue that the trial court erred in dismissing their common law fraud complaint by imposing an artificial direct communication requirement which does not exist under New York law. While the courts of New York have not clearly addressed whether an allegation of direct, face-to-face communication is required to prove a fraud claim in the retention of securities context, WorldCom Sec. Litig., 382 F.Supp.2d at 559, there is no doubt that a plaintiff must allege facts demonstrating justifiable reliance upon any alleged misrepresentation.
In New York state, to prove a fraud claim, a plaintiff must prove "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."
*520 AUSA Life Ins. Co. v. Ernst & Young, 206 F.3d 202, 208 (2d Cir.2000) (quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76, 668 N.E.2d 1370, 1373 (1996)).
The justifiable reliance element requires the plaintiffs to allege not only that a misrepresentation was somehow delivered from SSB to the plaintiffs, but that the nature of the misrepresentation was such that it induced them to hold their Winstar stock, and furthermore, that their induced inaction was reasonable. See WorldCom Sec. Litig., 382 F.Supp.2d at 559-60. Admittedly, the plaintiffs carry a heavy burden, and due to the difficulty in alleging justifiable reliance, and the potential for non-meritorious lawsuits, courts around the country have consistently rejected common law claims by the holders of securities. Id. at 559. See also Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 395 F.3d 25, 40-41 (2d Cir.2005); In re WorldCom Sec. Litig., 336 F.Supp.2d 310, 319 (S.D.N.Y.2004).
In the Second Amended Complaint, the plaintiffs allege that they justifiably relied on affirmative misrepresentations made by SSB in quarterly analyst reports, quarterly conference calls with Winstar shareholders, and in the news. However, in each of these situations, the statements made by SSB or its analysts were available to the public. As counsel for the plaintiffs properly conceded, although the Second Amended Complaint alleges that the plaintiffs "participated" in the quarterly conference calls, the plaintiffs cannot allege in good faith that SSB or Grubman was specifically aware of the plaintiffs' presence, or that the plaintiffs posed a question to any SSB representative. Thus, the plaintiffs were in no different position than any other stockholder who, upon hearing a market analyst's public forecast, decided against selling their stock.
In each of the cases where a plaintiff's holder claim under New York law survived a motion to dismiss, the affirmative misrepresentation was directly communicated from the defendant to the plaintiff. See, e.g., AUSA Life Ins. Co., 206 F.3d at 205; Pension Comm. of Univ. of Montreal Pension Plan, 446 F.Supp.2d at 204-05; Gutman v. Howard Sav. Bank, 748 F.Supp. 254, 258 (D.N.J.1990); Mercadante, 225 N.Y.S. at 489-90. In the instant case, there was no such direct communication. Here, the plaintiffs contend that a series of publicly disseminated Winstar stock forecasts made by an outside firm fraudulently induced the plaintiffs to retain their holdings. The plaintiffs, a group of Winstar vice president-stockholders, argue that their reliance on SSB's public forecasts of Winstar's performance was justifiable, even in the absence of a direct communication. However, the plaintiffs fail to cite a single New York or federal case supporting that proposition.
Therefore, although the trial court's order focused on the plaintiffs' failure to plead a sufficiently direct communication from the defendant to the plaintiffs, we find no error. Instead, like the trial court, we side with the great weight of authority concluding that with holder claims, the direct communication requirement is a logically necessary sub-element of justifiable reliance under New York law. See WorldCom Sec. Litig., 382 F.Supp.2d at 559-60.

ALLEGATIONS OF MATERIAL OMISSIONS
The plaintiffs also contend that SSB made actionable omissions of material facts while promoting the viability of Winstar stock. The trial court, however, based the order of dismissal, in part, on its finding that the plaintiffs are unable to allege a duty to disclose under New York law. See Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir.1993) ("A duty to *521 speak cannot arise simply because two parties may have been on opposite sides of a bargaining table when a deal was struck between them, for under New York law the ancient rule of caveat emptor is still alive and well.").
Citing the Brass case, the plaintiffs urge that the trial court erred in finding that the plaintiffs cannot allege that SSB had a duty to disclose under New York law. In Brass, the Second Circuit surveyed a number of cases and found that New York recognizes a duty by a party to a business transaction to speak in the following three situations: (1) where the party has made a partial or ambiguous statement; (2) when the parties have a confidential or fiduciary relationship with one another; and (3) where one party has superior knowledge unavailable to the other, and knows that the other party is acting upon the basis of mistaken knowledge. Id.
However, Brass presupposes that the parties are involved in a business transaction. Id. In this case, the plaintiffs have not alleged, and cannot allege, that they negotiated with SSB for the purchase or sale of stock, employed SSB's services, or exchanged confidential information with SSB. The two parties never engaged in a business transaction, and had no business relationship. Instead, as noted above, the plaintiffs' relationship with SSB was no different than that of a member of the public who, upon hearing an independent market analyst's public forecasts, accepts the attendant risks, and opts to retain his or her stock. New York law does not impose a duty to disclose all material facts that may be available to the forecaster in such a situation.
Affirmed.