JOSEPH M. SMITH, PLAINTIFF IN ERROR, v. FRANCIS DUFFY, DEFENDANT IN ERROR.

1. Where one, by fraudulent representations, induces another to purchase corporate stock as an investment, the loss which the purchaser suffers by retaining the stock, under the belief that the representations are true, is chargeable against the wrongdoer, such loss being presumptively within his contemplation at the time of committing the fraud.
2. In such cases, the market price of the stock, while the fraud is still operative upon the conduct of the purchaser, is unimportant.

On error.

In May, 1891, the plaintiff bought at par, from the defendant, ten shares of the capital stock of the Noble Coal Company, a Pennsylvania corporation which had been organized by the defendant and others. The purchase was induced by a statement made by the defendant to the plaintiff that the

company owned mines in Pennsylvania for which it had paid $400,000 in cash. This statement was false and fraudulent. The plaintiff purchased the stock as an investment, and, confiding in the truth of the statement, retained the stock until the company failed, early in the year 1893.

The plaintiff sued to recover damages resulting from the deceit, and the defendant now, on writ of error, complains because the trial court refused to have the plaintiff's damages measured as of the day when the sale took place, and refused to permit the defendant to show, in mitigation of damages, the market value of the stock at the time of the sale and for a year afterwards.

For the plaintiff in error, *James E. Howell.*

The action below was an action for deceit in the sale of stock of the Noble Coal Company. The evidence shows that Smith, on May 16th, 1891, sold to the plaintiff, Duffy, ten shares of the stock of the Noble Coal Company for $1,000, and took his note therefor. There was evidence from which the jury inferred deception, and the trial resulted in a verdict for the plaintiff.

On the trial, defendant sought to have the trial judge rule (1) that the plaintiff's damages must be measured as of the day when the transaction took place; (2) that it was competent for the defendant to show in mitigation of damages, that, as a matter of fact, at the time the transaction took place, the stock in question had a market value as large as the sum paid for it by the plaintiff, and that it continued to have a market value for at least a year after the transaction.

The bill of exceptions and assignment of errors cover the refusal of the court to allow evidence to be given of the market value of the stock at the time of and subsequent to the transaction, and as well as the refusal to charge as requested by the defendant.

I. As to the measure of damages.

The plaintiff throughout the case apparently considered that the true measure of damages was the contract price agreed

to be paid by Duffy to Smith, with interest from the date of the transaction, but that such is not the rule will be evident from a cursory reading of *Crater* v. *Binninger,* 4 *Vroom* 513, where the Chief Justice states the rule as follows: " The principle of justice, and, as I understand, of law, is that the party injured is to be compensated, at least, to the extent that redress is awarded judicially for the actual loss sustained. The effort is to reach this measure as near as possible, and unless in case he sues for punitive damages, nothing more than this is to be given."

In that case, the damages were augmented largely by the fact that the case had peculiar characteristics which modify the general rule by which damages are measured in case of fraudulent sales.

Mr. Crater, by the fraudulent practice of the defendant, was induced to embark in a continuing speculation, and his compensation was held to be the actual loss he had sustained from the beginning to the end of the speculation.

Such I understand to be the rule announced by the English Court of Exchequer in 1854, in the case of *Hadley* v. *Baxendale,* 9 *Exch.* 341.

If the plaintiff has suffered a loss, the question then comes, how is the amount of that loss to be ascertained?

In this case the plaintiff paid out $1,000. If the stock that he got for it had any value, that value must be accounted for by him—then, how are we to ascertain such value and the amount which he must allow for? The defendant insisted that a solution of the problem could be arrived at by showing the " market value" of the stock in question at the time of the transaction, and for a reasonable time (say one year) thereafter, and he attempted to show by the evidence that the stock had been sold on the market between the 16th of May, 1891, and the month of July, 1892.

There are many loose expressions in the books on the proper measure of the damages in cases of this character, and some of the earlier cases hold that they should be measured by the difference between the price paid and the value the

stock or merchandise would have had if it had been as it was represented, but such a rule would be in direct conflict with the rule in Crater *v.* Binninger, which declares in favor of compensation only.

The very recent case of *Smith* v. *Bolles,* 132 *U. S.* 125 (1889), contains the latest declaration of the United States Supreme Court on this question.   It holds, on the authority of Crater *v.* Binninger, that the true rule is " compensation," and declares in relation to the stock, which was the subject-matter of that suit, that " if the stock had a value in fact, that would necessarily be applied in reduction of damages." *Atwater* v. *Whiteman,* 41 *Fed. Rep.* 427; *Glaspell* v. *Northern Pacific Railroad Co.,* 43 *Id.* 900.

The same rule is now held in England.   *Peek* v. *Derry,* 37 *Ch. Div.* 541, in which Lord Justice Cotton held that the true measure of damages was the amount paid for the stock less " the then value of the shares."

Mr. Sedgwick, in his work on *Damages* (8*th ed.*), § 780, in commenting on these cases, remarks that it necessarily follows, from their rulings, that if the plaintiff is able to dispose of the property for as much as he paid for it, he cannot recover substantial damages.

The ruling is exactly in accord with that in Crater *v.* Binninger, and the necessary deductions are the same in the three cases referred to.

The New York Court of Appeals, in the recent case of *Vail* v. *Reynolds,* 118 *N. Y.* 297 (1890) (at *p.* 302), says: " There was evidence given on the part of the plaintiff which tended to show that the stock had no value, and which, if it had been uncontradicted, would have justified that conclusion. But Vandewater Smith, a witness called by the defendant, testified to a personal examination of the mine, and stated that, in his opinion, founded upon such examination, the property was worth $200,000, and that, after his examination, he purchased some of the stock of the company, paying therefor $2 per share.

"We think the defendant was entitled to have the jury consider this evidence, and if it had been believed it would have permitted the conclusion that the stock had a value of $2 per share."

Now, the actual value of stock can be ascertained, in practice, only by ascertaining what it would sell for on the market. There is but one other way—that is, to take an inventory and make a valuation of all the property and assets of a corporation, then to deduct its debts and liabilities and divide the remainder by the number of outstanding shares; but even this could not be done except in theory, for who can estimate the actual value of the assets of a large corporation like the Pennsylvania Railroad Company, or who can tell what its contingent liabilities, contract obligations and executory contracts will entail upon it in the way of loss? Besides, it would be absolutely impossible to do this in every case in which the question of the value of stock arises.

The evidence in this case is that the stock in question was sold on the market between May 16th, 1891, the date of the sale to Duffy, and July, 1892; that it had a market value; that attempts were made to purchase it and to sell it; in short, that it was an active stock and had a market value.

The market value is evidence of actual value, and where such market value is shown, that is the measure of compenpensation. *Sedgw. Dam.* (*8th ed.*), § 257, and cases cited, and especially *Redding* v. *Godwin*, 46 *N. W. Rep.* 563.

The market price is the price at which the stock is commonly sold. *Douglas* v. *Merselis*, 10 *C. E. Gr.* 144.

In transactions relating to real estate, on refusal of the vendor to convey, the rule of damages is the difference between the contract price and the market value of the land at the time of the delivery. *King* v. *Ruckman*, 9 *C. E. Gr.* 298. And Vice Chancellor Dodd, in that case, says that the rule is the same as to personalty. Also see *Drake* v. *Baker*, 5 *Vroom* 358.

For the conversion of shares of stock, the damages are the market value, either at the time of the conversion or after-

wards. *Cook Stock*, § 581, and cases cited; *Sedgw. Dam.*, §§ 493–495.

The same measure of damages is allowed in actions against corporations for refusal to transfer stock. *Cook Stock*, § 392; *Allen* v. *South Boston Railroad Co.*, 150 *Mass.* 200.

So for unauthorized sales of stock by a broker. *Taussig* v. *Hart*, 58 *N. Y.* 425.

II. The damages must be measured as of the date of the transaction.

If the rule laid down in Crater *v.* Binninger and in Smith *v.* Bolles is the law of this case, it follows, as a necessary conclusion, that the plaintiff's loss, if any, accrued at the date of the original transaction.

For the defendant in error, *Chauncey G. Parker* and *Cortlandt Parker, Jr.*

I. The trial judge was right in refusing to charge that the damages, if any, must be measured as of the day when the transaction took place.

This point is settled in this court by the cases of *Crater* v. *Binninger*, 4 *Vroom* 513; *Wolcott* v. *Mount*, 7 *Id.* 269; *S. C.*, 9 *Id.* 501; *Wakeman* v. *Illingworth*, 11 *Id.* 431; *Appleby* v. *State*, 15 *Id.* 167; *Boyd* v. *Deighan*, 18 *Id.* 404.

Crater *v.* Binninger is on all fours with the present case. It was an action of deceit to recover damages occasioned by plaintiff investing in a coal speculation, relying on the false and fraudulent representations of the defendant as to the price of lands purchased. The land was bought in eight shares and title taken in the name of a trustee. The speculation turned out to be a failure, and plaintiff, discovering the fraud, brought suit, claiming all the damages suffered from the time of his entering the speculation to the time of trial.

Defendant claimed that the damage, if any, should have been the difference between the real cost of the land and the false price. See 1 *Poth. Obl. (Evans' ed.)*, pt. 1, ch. II., art. 3.

In the leading case of *Wolcott* v. *Mount*, 7 *Vroom* 269;

*S. C.,* 9 *Id.* 501, Wolcott & Company sold to Mount certain seed, as "early strap-leafed red-top turnip seed." Mount informed Wolcott & Company that he wanted this seed to raise a crop for the early market. The seed was sown, and turned out to be a seed of inferior quality, and of different kind from that for which it was sold. It was held that the plaintiff could recover the difference between the market value of the crop raised and a crop of the same size consisting of the kind of turnips desired by the plaintiff.

Defendant contended that the measure of damages to be recovered was the difference between the value of the seed ordered and the value of the seed sold.

The rule as to damages laid down in *Crater* v. *Binninger,* 4 *Vroom* 513, was adopted and applied.

This rule was again declared to be the law in *Wakeman* v. *Illingworth,* 11 *Vroom* 434, 435.

Also, in *Appleby* v. *State,* 16 *Vroom* 161, where, in an action against a county clerk for the wrongful entry of payment of a mortgage, a purchaser of land who relied on the clerk's entry was held to be entitled to recover as damages all the damages suffered from the foreclosure of the mortgage and interest.

*Boyd* v. *Meighan,* 19 *Vroom* 404, is in accord with the general principles above laid down.

Therefore, the trial judge was right in refusing to charge that the damages, if any, must be measured as of the day when the transaction took place.

*Sharm* v. *Mosher,* 17 *Barb.* 518 : Plaintiff bought a horse, relying on defendant's representation that it was gentle. Horse ran away with plaintiff, and plaintiff had his leg broken. *Held,* that damages should be given for all the injury that naturally flowed from the fraud, and it was for the jury to say whether damage to vehicle and to his person should not be included. *Gaylard* v. *Cole,* 8 *Week. Dig.* 426, *semble* accordingly. In accord with *Wolcott* v. *Mount; Van Wyck* v. *Allen,* 69 *N. Y.* 61 ; *White* v. *Miller,* 71 *Id.* 118 ; *S. C.,* 78 *Id.* 393 ; *Bach* v. *Levy,* 18 *Jebb & S.* 519 ; *Fore* v. *Everson,* 27 *Hun* 355 ; *Moore* v. *King,* 57 *Id.* 224.

II. The first, second and fourth assignments of error may be considered together. They all relate to the question whether the market value of the stock, supposing a market value could be proved, has a bearing on the measure of damages in a case like the present.

It is submitted that, in this case, the market value of the stock in question, at the time of the transaction, had no bearing to the issue. The evidence shows that Duffy bought the stock as an investment. By reason of the defendant's fraud he became something more than a purchaser of stock. He was induced to embark in a speculation. He did not take title to land. That was placed in the company, controlled by the defendant and his associates, and, having entered the speculation by and through the fraudulent practices of the defendant, it seems clear that in conformity to well-settled rules like *Crater* v. *Binninger*, 4 *Vroom* 516, the defendant must be held answerable for the loss of the moneys which the plaintiff, without fault on his part, lost in this speculation.

If this is the law, and Crater *v.* Binninger so declares it, then the market value of the stock at the time of the transaction has no relevancy to the issue of what are the damages. Crater *v.* Binninger is express on this point; so is Wolcott *v.* Mount. In the last case, would the market value of the seed sold be relevant to the question of damages? Yes, if the damages were held to be the difference between the price of two kinds of seed; but, as the difference in the values of the different crops raised from those seeds is the measure of damages, the price of the seed is irrelevant. So, in this case, the difference in the fruit of this transaction, under existing circumstances from what it should have been, might be regarded as the true measure of loss, did not the courts refuse to speculate on probable values and confine themselves to the actual value paid with interest, and the actual value of the stock lost. *Crater* v. *Binninger, supra.*

It is further submitted, for the same reason, that the market value of this stock subsequent to the transaction down to the date of trial, has no relevancy to the issue.

In *Peek* v. *Derry*, 37 *Ch. Div.* 541 (1887), *coram*, Court of Appeal, action was for fraud by a stockholder in a private corporation against the directors for fraudulent misstatements made in the prospectus.

It was held that the market value of the shares, at the time of or subsequent to the transaction, had no relevancy to the measure of damages. The actual value, to be ascertained by considering all the circumstances of the case, including the final winding up, was to be considered.

Sir James Hannen (at *p.* 594) says : "The question is, how much worse off is the plaintiff than if he had not bought the shares? If he had not bought the shares he would have had his £4,000 in his pocket. To ascertain his loss we must deduct from that amount the real value of the thing he got. That must be ascertained by the light of events which have happened down to the time of the inquiry—not what the shares might have been sold for, because he was not bound to sell them, and subsequent events may show that what the shares might have been sold for was not their true value, but a mistaken estimate of their value."

Lord Justice Lopes (at *p.* 594) says : "Any damage occurring after the discovery of the fraud, when the plaintiff might have rescinded the contract, and which would not be attributable to his acting on the misrepresentation, but to other causes, in my opinion, would not be recoverable." See, on this point, remarks of Lord Justice Cotton, page 592. *Davidson* v. *Tullock*, 3 *Macq.* 783 ; *Trycross* v. *Grant*, 2 *C. P. D.* 469, 544, and *Arkwright* v. *Newbold*, 17 *Ch. Div.* 312, are in accord with this case.

In *Medling* v. *Mason*, 6 *Metc.* 246 (1843), it was objected that a plaintiff could not sustain an action of deceit against one who had fraudulently overstated the price which certain land had cost if the purchaser afterwards sold the land so purchased for more than he had given ; but such objection was overruled, and it was held that plaintiff could recover the damages actually sustained by reason of the fraud.

So, in *Cornell* v. *Jackson*, 4 *Cush.* 506 (1849), the same

point arose.   Plaintiff sued for breach of a covenant of war-
ranty in a deed, and showed that only a small part of the
land conveyed to him actually passed.   Defendant sought to
show that plaintiff had since conveyed away the land, but
the court held that such fact was immaterial and would not
affect the damages.   The question was what had been agreed
to be conveyed and what really had passed.   Practically, the
same rule of damages was laid down in this case as in Crater
v. Binninger.

Action of deceit for fraudulent representations in the sale
of stock.   *Smith* v. *Bolles*, 132 *U. S.* 125 (1889).

The court charged the jury at the trial that the measure of
damages is the difference between the contract price and the
reasonable market value if the property had been as repre-
sented; or, in case the stock is entirely worthless, then its
value is what it would have been worth if it had been as rep-
resented by the defendant, &c.

On error, Chief Justice Fuller says: "The suit was not
brought for breach of contract.   The gist of the action was
that the plaintiff was fraudulently induced by the defendant
to purchase stock upon the faith of certain false and fraudu-
lent representations, and so as to the other persons on whose
claims the plaintiff sought to recover.   If the jury believed
from the evidence that defendant was guilty of fraudulent
and false representations alleged, and that the purchase of
stock had been made in reliance thereon, then the defend-
ant was liable to respond in such damages as naturally and
proximately flowed from the fraud.   He was bound to make
good the loss sustained, such as the moneys the plaintiff had
laid out, and interest, and any other outlay legitimately
attributable to defendant's fraudulent conduct; but this lia-
bility did not include the expected fruits of an unrealized
speculation.   The reasonable market value, if the property
had been as represented, afforded, therefore, no proper element
of recovery."

The court goes on to say that "if the stock had an actual
value, that would necessarily be applied in reduction of dam-

ages." Crater *v.* Binninger is cited with approval and quoted from. *Atwater* v. *Whiteman,* 41 *Fed. Rep.* 427, *coram,* Mr. Justice Shiras (1890).

Action of deceit in sale of land (Smith *v.* Bolles) is construed.

Damages held to be difference between price paid and actual cash value of the land when conveyed, adding interest to time of trial. *Glaspell* v. *Northern Pacific Railroad Co.,* 43 *Fed. Rep.* 900 (1890), is in accord, *semble.*

III. The charge of the trial judge in this case was right. It was founded upón Crater *v.* Binninger and Smith *v.* Bolles. " If you can find from the evidence," he said, " that the stock had an actual value in the hands of the plaintiff, then that actual value must be deducted from the $1,000, and the balance, with interest from May 16th, 1891, will be the amount the plaintiff will be entitled to recover." In other words, he told them to find the actual value at the time of the transaction, deduct that from the price paid and add interest to date. That charge was more favorable to the defendant than he was entitled to under Crater *v.* Binninger. That case provides a rule, as follows : Find the price paid, add interest to date of trial, and if the property has any value in the hands of the plaintiff at the time of the trial, deduct that and give a verdict for the balance, thus throwing the depreciation in value upon the defendant, where it belongs.

No proof was given to show that the stock, at the time of the transaction, had any actual value. There was no proof as to the value of the land held by the company, nor was there any proof that the company had the actual benefit of any of the money subscribed. No attempt was made by the defendant and his friends to prove how much money was subscribed or how much the land cost. No one could say how much was given for it. The evidence seems to indicate what we believe to be the fact—that the land was purchased with the very money paid into the company to satisfy Pennsylvania law ; in other words, that Smith and his friends got the benefit of that money. And there is no evidence to show that $1 besides this $50,000 was ever paid to the company. A stock

company which has no money and whose only property is land, which has a speculative value only, can hardly be said to have any actual value.

The exceptions of the plaintiff in error do not raise the question whether or not the damages were excessive. That question could have been raised only by rule to show cause, and that course, though open to the plaintiff in error, was disregarded.

The opinion of the court was delivered by

DIXON, J. In cases of this character, the true rule of damages is that the wrongdoer must answer for those results, injurious to the other party, which should be presumed to have been within his contemplation at the time of the commission of the fraud. *Crater* v. *Binninger*, 4 *Vroom* 513; *Smith* v. *Bolles*, 132 *U. S.* 125.

We think it clear in the present case that the defendant must have expected, when he made his fraudulent representation, that the plaintiff would probably retain the stock so long as he believed the representation to be true. The plaintiff did so retain it until the company failed, and during all that time the deceit practiced upon him was effective in controlling his conduct. The loss, therefore, actually resulting from the fraud, and which must be presumed to have been within the contemplation of the defendant, was the difference between the plaintiff's investment and the value of the stock after the fraud ceased to be operative—that is, after the failure of the company. In the ascertainment of this difference, the market price of the stock at the time of the sale, or during the year succeeding, or at any time before the failure, was of no importance.

The ruling of the trial court was correct, and the judgment should be affirmed.

*For affirmance*—THE CHANCELLOR, DIXON, GARRISON, LIPPINCOTT, MAGIE, REED, BOGERT, BROWN. 8.

*For reversal* — THE CHIEF JUSTICE, GUMMERE, VAN SYCKEL, SIMS. 4.