Hillsborough,
April 7, 1936.

BROWN-WALES COMPANY *v.* GEORGE E. BARBER.

*Ivory C. Eaton* (by brief and orally), for the plaintiff.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Wadleigh* orally), for the defendant.

WOODBURY, J. The court's findings in relation to the treasury account item are not sufficient to support the verdict. From these findings it appears that there was no such item when the statement was made out, all of the newly authorized capital stock having then been issued, but it does not appear that there was no such item on January 1, 1931, the date as of which the statement spoke. In fact, on the undisputed evidence, it definitely appears that on that date there was actually in the treasury 45 shares of the old stock having a par value of eleven hundred and twenty-five dollars and that the new stock had not then been authorized. It follows that this item was not false and so cannot afford a ground for complaint by the plaintiff. Furthermore, it definitely appears that when the statement reached the plaintiff's credit manager this item read "taxes account," an error for which the court found that the defendant was not responsible, and that the credit manager would not have regarded this item, had it read correctly, as of any importance in passing upon the financial soundness of the Barber company.

In respect to the notes the defendant contends that his letter was an effectual discharge of them and that thereafter they did not constitute a valid and subsisting debt of the Barber company; that his subsequent attempt to collect a dividend on them was wholly ineffectual to revive them; and, hence, that they were truthfully omitted from the statement of liabilities. The validity of this argument depends entirely upon the construction to be given to the words which the defendant used in his letter. If he meant by them to unqualifiedly and forever renounce all rights under those notes, then the defendant's argument is valid. If, on the other hand, he meant only that he was willing that they should be treated as non-existent for the purpose of making a better showing on the financial statement, but that, under certain conditions at some future time, he might attempt to collect them, then the argument is without validity.

In his letter he did not categorically and expressly renounce all rights under the notes. He told the treasurer to "reduce the liabilities by considering the two notes of mine . . . paid" and that "This, as I see it, is the only way that this account can be made to look right to show to the bank or any other inquiring creditors, and I am willing to make this break and consider the $2500 paid, and see how the future comes out." What did he mean by those words? Did he mean that he was finally abandoning all rights, or only that he was temporarily foregoing them for the purpose of obtaining further credit for the H. H. Barber company?

The court, in order to determine his meaning, took into consideration the defendant's later conduct in respect to the notes, that is, his attempt to prove them as a liability of the corporation after it had assigned for the benefit of its creditors. This evidence of the practical construction which the defendant put upon his own words derives its probative force from the assumption that one will act according to his words, that is, that one will be truthful, and its admissibility for the purpose of determining the meaning to be given to ambiguous words is well established. *Smart* v. *Huckins*, 82 N. H. 342, 347, and cases cited.

On the basis of this evidence and upon the wording of the letter as a whole, the court, by its verdict, endorsed the plaintiff's contention as stated in the findings that the "notes were taken out of the liability only temporarily, and did not constitute a *bona fide* reduction." It seems obvious that this is a reasonable conclusion to draw and as such it cannot be reversed.

The further contention is made that the notes were canceled by the defendant on January 15, 1931, and that this act effectively discharged them.

It is true that words of cancellation appeared on the notes at the time of the trial and that the defendant testified that he wrote those words on January 15, 1931. The court, however, did not give credence to his testimony as to the time when those words were written. As the case stands, therefore, there is no finding as to when the notes were canceled. Without this the written cancellation, for the purposes of this case, is without legal effect. They may as well have been canceled just before trial as at any other time.

The court's further findings that the false schedule of liabilities was relied upon by the plaintiff's credit manager, that the defendant knew that the schedule was false, and that it related to a material matter are all supported by the evidence.

It follows that the verdict for the plaintiff should be sustained.

In further attack upon the verdict the defendant asserts that "the measure of damages in an action of deceit is the difference between the value of what the plaintiff received and what he would have received had the false representations been true." He then urges that the plaintiff suffered no loss by reason of the false statement because the dividends paid by the assignee to the creditors were not thereby reduced. That is, that the success or failure of the Barber company was not affected by the omission of the notes from the statement of its condition, and that its assets were not reduced because of the notes for the reason that the defendant did not, in fact, collect any dividend upon them.

This argument results from a misconception of the rule of damages. The rule above quoted is correct in cases of deceit in the sale of property, but it is only one manifestation or application of the broader general rule that for fraudulent misrepresentation one is entitled to recover from its maker the loss which he has sustained by reason of his action or inaction upon it. Or, as stated in *Hotaling* v. *Company*, 247 N. Y. 84, "The rule is general that actual pecuniary loss sustained as a direct result of the wrong is the measure to be applied in fixing damages." See also *Reno* v. *Bull*, 226 N. Y. 546 (cited in the above case); *Tedder* v. *Riggin*, 65 Fla. 153; *Fottler* v. *Moseley*, 185 Mass. 563; *David* v. *Belmont*, 197 N. E. Rep. (Mass.) 83.

The question then is not whether the defendant's false statement rendered the H. H. Barber company insolvent or reduced its assets available for creditors, but whether or not the plaintiff, in reliance upon that false statement, took or refrained from any action which resulted in a pecuniary loss to it.

The court has found that had the plaintiff been apprised of the true situation when it received the statement it would, from that time on, have refused to extend further credit. Implicit in the verdict is the further finding that it would also have been successful in collecting all debts due it from the Barber company before that company assigned. *Spaulding* v. *Mayo*, 81 N. H. 85. The false statement then induced the plaintiff to continue to do business with the Barber company, and lulled it into a false sense of security so that it did not take more effective steps to collect past indebtedness. The plaintiff's loss, therefore, is what it lost on the account with the Barber company, because, had the statements been true instead of false, it would not have suffered any loss.

The foregoing discussion disposes of all matters raised by the de-

fendant's exceptions to the findings and rulings of the court. His other exceptions have not been briefed or argued and a careful examination of the record discloses that they are without merit.

*Judgment on the verdict.*

All concurred.