98 Cal.Rptr.2d 530 (2000)
82 Cal.App.4th 741
Harvey GREENFIELD, Plaintiff and Appellant,
v.
FRITZ COMPANIES, INC., et al. Defendants and Respondents.
No. A086982.
Court of Appeal, First District, Division Four.
July 28, 2000.
As Modified August 3, 2000.
Review Granted November 21, 2000.
*533 Stull, Stull & Brody, Michael Braun and Marc L. Godino, Jules Brody, Mark Levine, of counsel, Los Angeles, for Plaintiff and Appellant.
William F. Alderman, Orrick, Herrington & Sutcliffe, San Francisco, for Defendant and Respondent.
POCHÉ, J.
This appeal from a judgment of dismissal entered after the trial court sustained a general demurrer without leave to amend presents two questions. The first is whether the plaintiff here has pleaded the allegations of actual reliance required by Mirkin v. Wasserman (1993) 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568 and Lazar v. Superior Court (1996) 12 Cal.4th 631, 49 Cal.Rptr.2d 377, 909 P.2d 981 for causes of action for fraud and negligent misrepresentation. Our answer to this question is Yes. The second question is whether those causes of action may be based on the decision of corporate shareholders not to sell their shares after they have received material and misleading statements from the corporation; in order words, can damages for fraud be recovered when misrepresentations induce forbearance? Although this issue arises in a novel context for California, it requires only the application of familiar principles. Our answer to the second question is also Yes.

BACKGROUND
The pleading at issue is the second amended complaint filed by plaintiff Harvey Greenfield. Our function on review is to accept all its factual allegations as true, and to give it a reasonable construction as a whole and all of its parts in their context. (E.g., Garcia v. Superior Court (1990) 50 Cal.3d 728, 732, 268 Cal.Rptr. 779, 789 P.2d 960.) That task is eased considerably because only one element common to two causes of action is disputed.
Plaintiff filed the complaint "on behalf of himself and all others similarly situated," specifically, "a class of all persons who owned and held Fritz common stock" during the period from April 2, 1996, through July 24, 1996 (which the complaint terms the "Relevant Period"). The defendants are Fritz Companies, Inc., (the corporation) and three of its directors and officers. The "Relevant Period" commenced when defendants omitted material information about the financial prospects of the corporation (whose shares were publicly traded) from a document provided to the corporation's shareholders, including plaintiff. The period ended when the corporation dramatically revised downward its revenues and earnings reported in the April 2 document, thereby causing the value of common shares to plummet "more than 55% in one day." Plaintiff seeks to recover compensatory damages for the difference in value of the shares on April 2 and July 24, approximately $15.25 per share, together with punitive damages.
The relevant causes of action are for fraud and negligent misrepresentation, both of which require a plaintiff to prove actual reliance on a misrepresentation or an omission. (Mirkin v. Wasserman, supra, 5 Cal.4th 1082, 1088-1089 & fn. 2, 1091-1093, 23 Cal.Rptr.2d 101, 858 P.2d 568.)[1] The pertinent allegations made in *534 plaintiff's second amended complaint concerning the issue of reliance are as follows:
"On or shortly after April 2, 1996, plaintiff Harvey Greenfield and all Class members received a statement sent by Fritz to its shareholders reporting, among other things, Fritz' revenue, net income and earnings per share, recorded by Fritz for the third quarter ending February 29, 1996. Plaintiff Harvey Greenfield and all Class members read this statement, including the information related to the reported revenue, net income and earnings per share, and relied on this information in deciding to hold Fritz stock throughout the Relevant Period."[2] These allegations were made twice in the complaint. They were incorporated by reference in each of the causes of action at issue here.
The cause of action for negligent misrepresentation also has these allegations: "Defendants owed to plaintiff and the other Class members a duty ... to act with reasonable care in preparing the information ... disseminated to plaintiff and the Class, which plaintiff and the Class relied upon in deciding to hold their shares of Fritz stock.... [¶] Plaintiffs and the Class read or were otherwise made aware of Fritz' misstatements regarding the Company's third fiscal quarter 1996 revenue, net income and earnings per share, and relied upon the same in electing to hold their Fritz stock through the Relevant Period."
The fraud cause of action also has these allegations: "Plaintiff and the Class, without knowledge of the falsity of the material misstatements, misrepresentations and omissions by defendants, and believing such misrepresentations and misstatements reflected in the positive representations and positive reports of earnings to be true and complete, and in reasonable and justifiable reliance upon the truth and completeness of the misrepresentations and misstatements made by defendants and their agents, held shares of defendant Fritz. Plaintiff and the Class would not have held their shares but for their reliance upon the truth and completeness of the misstatements and misrepresentations defendants made regarding Fritz and its business."
Defendants interposed a general demurrer based upon two grounds. The first was that each of the complaint's causes of action "fails to state facts sufficient to constitute a cause of action because the Second Amended Complaint does not `plead with the requisite specificity the facts alleged to constitute actual reliance by any person on whose behalf plaintiff seeks to assert such claims.'" The second ground was that "California law does not recognize any such claim on behalf of shareholders who neither bought nor sold shares based upon any alleged misstatement or omission." The trial court sustained the demurrer on the first ground without granting leave to amend; the court found it unnecessary to address the second ground of the demurrer, i.e., "the viability of plaintiffs underlying theory of liability." Plaintiff filed a timely notice of appeal.[3]

*535 REVIEW

I
A number of preliminary issues concerning the scope of this appeal must be made in response to the parties' briefs and contentions presented at oral argument. Plaintiff has two headings in his opening brief, that "the complaint pleads actual reliance," and that it "satisfies the Mirkin standard for pleading reliance." A major theme of plaintiffs argument is that, in accordance with Vasquez v. Superior Court (1971) 4 Cal.3d 800, 94 Cal.Rptr. 796, 484 P.2d 964 and Occidental Land, Inc. v. Superior Court (1976) 18 Cal.3d 355, 134 Cal.Rptr. 388, 556 P.2d 750, this is an appropriate case for drawing an inference of reliance as to the entire putative class. Defendants' brief also has two headings. The first is that "Plaintiff cannot state a classwide fraud claim based on the conclusory allegations of reliance rejected by the Supreme Court in Mirkin." During the course of developing this argument defendants dispute the propriety of a class-wide inference of reliance. In addition to arguing that plaintiff did not satisfy the pleading requirement for reliance, defendants also claim that the complaint is inadequate on the issue of causation. Commencing with a footnote in their brief and as more fully developed at oral argument, defendants also submit that the trial court's ruling can and should be construed as a determination of the viability of a class action. The second heading of defendants' brief is that "No California court has ever embraced plaintiffs theory of securities fraud liability to investors who neither bought nor sold securities." Noting that plaintiff failed to raise this issuethe ground for their demurrer which the trial court did not addressin his opening brief, defendants assert that this omission "precludes plaintiff from belatedly arguing the point in his reply [brief]." While developing their second point, defendants break away from it to suggest that plaintiffs complaint should (and on a class-wide basis must) have been brought as a shareholder derivative action. In his reply brief plaintiff argues in effect that the second ground for the demurrer is not an issue because it was not addressed by the trial court. He insists that defendants "have thrown everything into their Opposition but the kitchen sink" and that, apart from whether reliance was adequately pleaded, all of defendants' other arguments are "outside the scope of this appeal."
Neither side has been exemplary in appreciating the scope of arguments which are legitimate for this appeal nor overly scrupulous in presenting them. Plaintiff appears not to have realized that if he prevailed on the reliance issue, we would nevertheless be required to consider the other ground of defendants' demurrer pursuant to the rule of appellate view that "[a] judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the [trial] court acted on that ground." (Carman v. Alvord (1982) 31 Cal.3d 318, 324, 182 Cal.Rptr. 506, 644 P.2d 192.) This rule appears to be based on the familiar principle that an appellate court reviews the validity of a lower court's action, not the reasoning behind that action. (See E.L. White, Inc. v. City of Huntington Beach (1978) 21 Cal.3d 497, 504 & fn. 2, 146 Cal.Rptr. 614, 579 P.2d 505.) On the other hand, the issues of causation and whether plaintiff should proceed by a shareholder derivative action were never mentioned in defendants' demurrer *536 or supporting papers, contrary to Code of Civil Procedure section 430.60 and rules 313(b) and 325(a) of the California Rules of Court. And while defendants are correct that the propriety of a class action can be handled by demurrer, the instances cited by defendant where this occurred all involved demurrers specifically directed at the class action allegations. (See, e.g., Silva v. Block (1996) 49 Cal.App.4th 345, 348-349, 56 Cal.Rptr.2d 613; Kennedy v. Baxter Healthcare Corp. (1996) 43 Cal.App.4th 799, 803, 805-807, 50 Cal.Rptr.2d 736; Clausing v. San Francisco Unified School Dist. (1990) 221 Cal.App.3d 1224, 1229, 1231-1232, 271 Cal.Rptr. 72; Brown v. Regents of University of California (1984) 151 Cal.App.3d 982, 985-986, 198 Cal.Rptr. 916.) That is not what defendants did in this case.
With neither side having a superior standing to the other, we address both of the stated grounds for defendants' general demurrer. Because it was a general demurrer and one of the grounds for it was that plaintiff had failed to state facts sufficient to constitute a cause of action, we will consider the issue of causation. Our Supreme Court has held that a general demurrer "searches the complaint for all defects going to the existence of a cause of action" (Carman v. Alvord, supra, 31 Cal.3d 318, 324, 182 Cal.Rptr. 506, 644 P.2d 192), and "all defects" appears to mean the absence of any element vital for a cause of action. (See 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 905, p. 366.) This follows from the nature of our reviewde novoand our function to determine whether the complaint shows any entitlement to relief. (E.g., Hernandez v. City of Pomona (1996) 49 Cal. App.4th 1492, 1497, 57 Cal.Rptr.2d 406.) To review causation in the context of fraud is particularly easy given that causation is commonly treated as an aspect of justifiable reliance. (E.g., Molko v. Holy Spirit Assn. (1988) 46 Cal.3d 1092, 1108, 252 Cal. Rptr. 122, 762 P.2d 46; Younan v. Equifax Inc. (1980) 111 Cal.App.3d 498, 513;, 169 Cal.Rptr. 478, 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 711, p. 810.)
Both sides are fixated upon issues and implications attending the complaint becoming a class action. These concerns are premature. We do not discount the possibility that a potential class may be so defectively defined that it will fall to a general demurrer. In this instance, however, the question of whether any causes of action plaintiff succeeds in alleging will support a class action is a matter the trial court has never considered. Given that court's wide discretion in deciding whether to certify a class action (e.g., hinder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 435-436, 97 Cal.Rptr.2d 179; Richmond v. Bart Industries, Inc. (1981) 29 Cal.3d 462, 470, 174 Cal.Rptr. 515, 629 P.2d 23), we will not venture the first opinion on this matter. The same is true for defendants' claim that any causes of action plaintiff aims to assert on behalf of a class of shareholders must be handled as a shareholder derivative action. The prospects for this position would appear to be problematic. Defendants may be right if the nature of the proposed action is to vindicate a corporate right, but the complaint will survive if plaintiff is asserting a personal cause of action, of which fraud is one example. (See, e.g., Sutter v. General Petroleum Corp. (1946) 28 Cal.2d 525, 530, 170 P.2d 898; Nelson v. Anderson (1999) 72 Cal.App.4th 111, 124-125, 84 Cal. Rptr.2d 753.) To complicate matters further, it is possible plaintiff may be entitled to proceed, but only for himself. (See Sutter v. General Petroleum Corp., supra, 28 Cal.2d at p. 530, 170 P.2d 898 ["a stockholder may sue as an individual where he is directly and individually injured although the corporation may also have a cause of action for the same wrong."].) This also is a matter we think best reserved in the first instance for the trial court when and if it is presented with the issue of allowing plaintiffs complaint to form the basis for a class action. Finally, if matters do reach that stage, the trial *537 court may also consider the appropriateness of a class-wide inference of actual reliance. (See Mirkin v. Wasserman, supra, 5 Cal.4th 1082, 1094-1095, 23 Cal. Rptr.2d 101, 858 P.2d 568 [discussing Vasquez & Occidental Land ].)

II
We cannot agree with the first basis for the demurrer.
"In California, fraud must be pled specifically; general and conclusory allegations do not suffice. Thus, the policy of liberal construction of the pleadings ... will not ordinarily be invoked to sustain a pleading defective in any material respect. This particularity requirement necessitates pleading facts which show how, when, where, to whom, and by what means the representations were tendered." (Lazar v. Superior Court, supra, 12 Cal.4th 631, 645, 49 Cal.Rptr.2d 377, 909 P.2d 981, original italics; citations & internal quotation marks omitted.) This requirement of specificity has the dual purposes of providing definite notice to the defendant and allowing the trial court to weed out non-meritorious claims. (Committee on Children's Television, Inc. v. General Foods Corp. (1983) 35 Cal.3d 197, 216-217, 197 Cal.Rptr. 783, 673 P.2d 660.)
Plaintiff has not failed to satisfy the requirement of particularized pleading. His allegations are more than adequate to meet the criteria mentioned in Lazar. How were the misrepresentations made? By "a statement sent by Fritz to its shareholders." When were the misrepresentations made? In the statement, which was received by the shareholders "[o]n or shortly after April 2, 1996." These allegations also answer the where, to whom, and by what means requirements. Plaintiffs allegations clearly identify the subject of the misrepresentationsstatements in the April 2 mailing relating to "Fritz' revenue, net income and earnings per share, recorded by Fritz for the third quarter ended February 29, 1996." Plaintiff further and repeatedly alleged that he did in fact receive this statement "and relied on this information in deciding to hold Fritz stock." Plaintiff even satisfied the additional requirements against a corporate defendant by identifying the individuals who made the misrepresentations on the corporation's behalf. (See Lazar v. Superior Court, supra, 12 Cal.4th 631, 645, 49 Cal.Rptr.2d 377, 909 P.2d 981; Tarmann v. State Farm Mut. Auto. Ins. Co. (1991) 2 Cal.App.4th 153, 157, 2 Cal.Rptr.2d 861.) This was enough to satisfy the reliance element required for causes of action for fraud and negligent misrepresentation. (See, e.g., Wennerholm v. Stanford Univ. Sch. of Med. (1942) 20 Cal.2d 713, 715-716, 128 P.2d 522; Pierce v. Lyman (1991) 1 Cal.App.4th 1093, 1097-1100, 1107, 3 Cal. Rptr.2d 236; 5 Witkin, Cal. Procedure, supra, Pleading, § 686, pp. 145-147.)
Any lingering doubt is dispelled by two factors. The first is that defendants have at all times possessed unquestionably greater knowledge of the corporation's financial affairs, a consideration that "mitigate[s] the rigor of the rule requiring specific pleading of fraud." (Committee on Children's Television, Inc. v. General Foods Corp., supra, 35 Cal.3d 197, 217, 197 Cal.Rptr. 783, 673 P.2d 660.) The second factor relaxing the strict pleading rule is that the individual defendants who are corporate directors are fiduciaries to shareholders such as plaintiff. (E.g., Eldridge v. Tymshare, Inc. (1986) 186 Cal. App.3d 767, 777, 230 Cal.Rptr. 815; 9 Witkin, Summary of Cal. Law, (9th ed. 1989) Corporations, § 106, p. 604.)
The allegations are also adequate to show causation. Plaintiff demonstrated cause and effectdefendants' misrepresentations induced plaintiff not to sell his stock, "when [he] otherwise would have done so," and he suffered "damage by virtue of the wrongfully induced decision to hold Fritz stock." For pleading purposes that is sufficient. (E.g., Commonwealth Mortgage Assurance Co. v. Superior Court (1989) 211 Cal.App.3d 508, 518, 259 Cal.Rptr. 425; Woodson v. Winchester *538 (1911) 16 Cal.App. 472, 476-477, 117 P. 565.)
Mirkin v. Wasserman, supra, 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568, is a decision much discussed in the parties' briefs. The reasons are obvious. Mirkin also involved a complaint framed as a class action, also for misrepresentations affecting share prices. It is also a case where the complaint was dismissed after a demurrer made on the ground that the reliance element was not sufficiently pleaded was sustained. These similarities cannot obscure fundamental differences. First, the plaintiffs in Mirkin acknowledged that they could not allege that they had actually read or received the supposed misrepresentations. (Id. at p. 1089, 23 Cal.Rptr.2d 101, 858 P.2d 568.) In the case at hand, we have a plaintiff who has satisfied the rigorous pleading requirements needed to state a cause of action for fraud. Second, Mirkin is factually distinguishable because the plaintiffs there were alleging fraud that induced them to purchase shares. (Id. at pp. 1087-1088, 23 Cal.Rptr.2d 101, 858 P.2d 568.) Here, as more fully explained in part III, post, the alleged fraud induced plaintiff and the potential class not to sell shares they had already purchased. Finally, the major point decided in Mirkin was our Supreme Court's refusal to transplant the fraud-on-the-market theory which includes a presumption of reliance from federal securities law regulating the sale and purchase of publicly-traded securities into California common law fraud claims. (Id. at pp. 1100-1108, 23 Cal. Rptr.2d 101, 858 P.2d 568; see Securities Exchange Act of 1934, § 10(b), 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5 (1999); Basic Inc. v. Levinson (1988) 485 U.S. 224, 241-247, 108 S.Ct. 978, 99 L.Ed.2d 194.) Here, for the reasons discussed in part I, ante, the only issue of reliance needed for disposition of this appeal is actual, not presumptive. The exclusive focus here is upon plaintiff and his pleading on behalf of himself alone. Beyond reiteration of the principle that actual reliance must be alleged, Mirkin does not have a holding for this appeal.
Perhaps plaintiffs complaint does not connect every dot, but it does "show how, when, where, to whom, and by what means the representations were tendered." (Lazar v. Superior Court, supra, 12 Cal.4th 631, 645, 49 Cal.Rptr.2d 377, 909 P.2d 981.) It has the particularity required to provide fair notice to the defense and assurance to the court that the complaint has a prima facie foundation of merit. Accordingly, the sole basis for the demurrer expressly sustained by the trial court was not sound.

III
The only other issue we are required to take up is the other basis for the demurrer, the one expressly left open by the trial court, i.e., "the viability of plaintiffs underlying theory of liability." If this other ground is well taken, the judgment of dismissal may nevertheless be affirmed. (E.g., Carman v. Alvord, supra, 31 Cal.3d 318, 324, 182 Cal.Rptr. 506, 644 P.2d 192.)
Defendants have told this court, both in their brief and at oral argument, that the causes of action plaintiff has alleged are utterly without precedent in California and the nation as a whole. Our research proves otherwise. The core of plaintiffs complaint is that defendants made misrepresentations which induced him to continue holding shares of the corporation that he otherwise would have sold. Starting almost a century ago, virtually identical causes of action have already been recognized in New York, Massachusetts and New Jersey. (Continental Insurance Co. v. Mercadante (1927) 222 A.D. 181, 225 N.Y.S. 488; Fottler v. Moseley (1901) 179 Mass. 295, 60 N.E. 788; David v. Belmont (1935) 291 Mass. 450 [197 N.E. 83]; Gutman v. Howard Sav. Bank (D.N.J.1990) 748 F.Supp. 254 [applying New York & New Jersey law]; see Smith v. Duffy (1895) 57 N.J.L. 679 [sub nom, Duffy v. Smith, 32 A. 371] [plaintiff fraudulently induced to buy stock could recover damages *539 for period of retaining stock in reliance on same representation]; Rothmiller v. Stein (1894) 143 N.Y. 581, 38 N.E. 718.)[4] There is good reason to believe that New Hampshire and Wisconsin would also look favorably to such a claim. (See Brown-Wales Co. v. Barber (1936) 88 N.H. 103, 184 A. 855; Seideman v. Sheboygan Loan & Trust Company (1929) 198 Wis. 97, 223 N.W. 430.)[5] We conclude that California should join these ranks.
For many years the courts of this state have entertained common law actions for fraud arising out of the sale of corporate stock. (E.g., Hobart v. Hobart Estate Co. (1945) 26 Cal.2d 412, 159 P.2d 958; Sewell v. Christie (1912) 163 Cal. 76, 124 P. 713.) It is equally well established that misrepresentations concerning the same type of financial information at issue here have been accepted as fraudulent and actionable. (E.g., McElligott v. Freeland (1934) 139 Cal.App. 143, 33 P.2d 430; H.W. Smith, Inc. v. Swenson (1930) 105 Cal.App. 60, 286 P. 1050.) There is no reason in either law or logic why the same result should not apply to a situation where corporate stockholders are fraudulently induced to retain or refrain from selling their shares.
The principle of inaction invoked by plaintiff goes by the legal rubric of forbearance. The idea is that if a person has the right or the power to do something, the refusal to exercise that power has worth and legal significance. Accordingly, California courts accept that a party's forbearance can be sufficient consideration to support a contract and likewise has the potency to overcome the statute of frauds. (E. g., Schumm v. Berg (1951) 37 Cal.2d 174, 185, 187-188, 231 P.2d 39; Rest.2d Contracts, §§ 90, 139; 1 Witkin, Summary of Cal. Law, supra, Contracts, § 214, p. 223.) There is no reason why forbearance which is induced by fraud and which is the cause of damage should not be actionable. The American Law Institute was clearly of this opinion when it formulated the misrepresentation provisions for the Second Restatement of Torts. Section 525 of the restatement states: "One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." (Italics added.) Section 531 states the "general rule" that "[o]ne who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced." (Italics added.) And section 551(1) states: "One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose...." (Italics added.) The principle of forbearance has deep roots in the law of fraud. (See, e.g., 37 Am.Jur.2d (1968) Fraud and Deceit, § 225, pp. 300-301; 37 C.J.S. (1997) Fraud, § 53, pp. 241-242; Guild v. More (1915) 32 N.D. 432, 155 N.W. 44, 48-49 and decisions cited; Butler v. Watkins (1871) 80 U.S. (13 Wall.) 456, *540 463, 20 L.Ed. 629 ["A manufacturer ... may not fraudulently or by deceitful representations induce another to withhold from sale his products without being answerable for the injury occasioned by the fraud."].)
Although the precedents are few, there is a sound basis for concluding that California law recognizes that induced forbearance can be the basis for tort liability. When Mr. Halagan was told by Mr. Ohanesian and others not to accept an offer to buy his hotel because they had a better offer for him, Mr. Halagan's reliance on defendants' misrepresentation to the extent of foregoing his opportunity to accept the other offer amounted to compensable fraud. (Halagan v. Ohanesian (1967) 257 Cal.App.2d 14, 17-19, 64 Cal. Rptr. 792.) When Mr. Richardson accepted the bid of Mr. and Mrs. Carlson to buy a parcel of real property and then delayed performance for three years, thereby causing the Carlsons to forgo the opportunity to purchase other lots, this court held that the Carlsons had stated a valid cause of action that would survive a general demurrer. (Carlson v. Richardson (1968) 267 Cal.App.2d 204, 206-208, 72 Cal.Rptr. 769.) When judgment creditor Marshall was told by judgment debtor Buchanan that there were no assets that could be levied to satisfy the judgment, and Marshall in reliance thereon allowed the judgment to expire before learning that Buchanan had been hiding assets in another's name, our Supreme Court held that Marshall had stated a cause of action for fraud. (Marshall v. Buchanan (1868) 35 Cal. 264.) When Attorney Pollack was assured by Attorney Lytle that the latter had secured a medical expert for a malpractice trial, this induced Pollack to forbear from obtaining another expert. After Pollack lost the case because no expert testified, he was sued by the disgruntled former client. Pollack's complaint against Lytle for fraud was held to state a cause of action. (Pollack v. Lytle (1981) 120 Cal.App.3d 931, 175 Cal.Rptr. 81.) And when the Chrysler Corporation wished to dissuade a dealership from closing and assured the dealership that it (Chrysler) would find a buyer, the dealership was allowed to sue for fraud when Chrysler failed to perform. (Pinney & Topliff v. Chrysler Corporation (S.D.Cal.1959) 176 F.Supp. 801.) There are factual differences between all of these decisions,[6] but they do not diminish the point that inaction or forbearance caused by misrepresentations is not a stranger to the California law of fraud. Nothing that has come to our attention provides a basis for believing that this state would not embrace this statement on the issue from a federal court: "Lies which deceive and injure do not become innocent merely because the deceived continue to do something rather than begin to do something else. Inducement is the substance of reliance; the form of relianceaction or inactionis not critical to the actionability of fraud." (Gutman v. Howard Sav. Bank, supra, 748 F.Supp. 254, 264; see Reddaway v. Banham (1896) App.Cas. 199, 221 ["fraud is fraud all the same; and it is the fraud, not the manner of it, which calls for the interposition of the Court."]; Cont'l N. Bank v. N. Bank of the Com'wealth (1872) 50 N.Y. 575, 586 ["forbearance ... induced by false or erroneous statement, may be quite as damaging as any result from action.... When an act produces conduct from which flows injury, it cannot matter whether that conduct be affirmative or negative, active or quiescent."].)
Defendants read the Mirkin opinion as providing two prudential grounds why a common law fraud cause should not be *541 recognized in the securities field. Neither is persuasive.
First, defendants tell us that "inasmuch as the Legislature has enacted a comprehensive regulatory scheme governing the subject, the careful balance established by the legislative process should not be disturbed." The Mirkin court stated that "we have emphasized in recent decisions that courts `should be hesitant to "impose [new tort duties] when to do so would involve complex policy decisions," especially when such decisions are more appropriately the subject of legislative deliberation and resolution.' This admonition has particular force when the plea to expand liability concerns an area, such as securities fraud, in which the Legislature has already acted." (Mirkin v. Wasserman, supra, 5 Cal.4th 1082, 1104-1105, 23 Cal.Rptr.2d 101, 858 P.2d 568, citations omitted.) This reasoning is sound, but it has no application here because judicial common law authority operates under no statutory inhibition; indeed, it enjoys positive legislative sanction.
The primary federal statute, the Security Exchange Act of 1934, is pegged to the requirement of a sale or purchase of a security. (See 15 U.S.C. § 78j(b); Blue Chip Stamps v. Manor Drug Stores (1975) 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539.) It disclaims preemption of state remedies and tolerates some overlap with state authority. (See 15 U.S.C. § 78bb(a); Matsushita Elec. Industrial Co. v. Epstein (1996) 516 U.S. 367, 383, 116 S.Ct. 873, 134 L.Ed.2d 6; Diamond Multimedia Systems, Inc. v. Superior Court (1999) 19 Cal.4th 1036, 1056, 80 Cal.Rptr.2d 828, 968 P.2d 539.) The primary California regulatory scheme is the Corporate Securities Law (Corp.Code, § 25000 et seq.), which, in its various versions, has always had as its highest objective the protection of the public from fraud in stock transactions. (E.g., In re Hatch (1937) 10 Cal.2d 147, 151-152, 73 P.2d 885; Daugherty v. Riley (1934) 1 Cal.2d 298, 305, 34 P.2d 1005; Eisenbaum v. Western Energy Resources, Inc. (1990) 218 Cal.App.3d 314, 327, 267 Cal.Rptr. 5.) It incorporates a number of differing approaches to achieve that general goal. (See Olson, The California Corporate Securities Law of 1968 (1968) 9 Santa Clara L.Rev. 75, 76.) Like its federal counterpart, its focus is upon sales and purchases of securities. (Corp.Code, §§ 25400-25402, 25400.) Even more explicitly than the federal act, the California scheme allows for common law activity: "Nothing in this chapter ["civil liability," § 25500 et seq.] shall limit any liability which may exist by virtue of any other statute or under common law if this law were not in effect." (Corp.Code, § 25510.) A tightly-reasoned Court of Appeal opinion examined the Corporate Securities Law and found that "Nowhere in the aforementioned statutory scheme is there any suggestion that the Legislature intended to abolish ... common law fraud," and this was but one part of a larger legislative intent "not to abolish the common law actions and remedies.... The Legislature has established a carefully drafted series of actions and remedies that supplement common law actions, remedies and limitations." (Bowden v. Robinson (1977) 67 Cal.App.3d 705, 716-717, 136 Cal.Rptr. 871.)
The Supreme Court in Mirkin refused to upset the balance between the statutory remedy established by the Corporate Securities Law and the common law remedy of a fraud cause of action. The former indulged a presumption of reliance, thus reducing the plaintiffs burden of proof; the latter offered a longer statute of limitation and the opportunity to recover punitive damages. (Mirkin v. Wasserman, supra, 5 Cal.4th 1082, 1090-1091, 1101-1105, 23 Cal.Rptr.2d 101, 858 P.2d 568; see Bowden v. Robinson, supra, 67 Cal.App.3d 705, 714-715, 136 Cal.Rptr. 871.) By seeking to import the fraud-on-the-market theory and its presumption of reliance from the statutory cause of action into common law fraud, the plaintiff in Mirkin was seeking to have the best of both worlds. A *542 crucial factor in appreciating the court's refusal to blur the lines between the two remedies is that both operated in the area of stock sales. The situation here is entirely different. There is no statutory remedy for the harm plaintiff alleges he suffered from not selling his stock. He is willing to proceed with his common law remedy and "`the formidable task of proving common law fraud.'" (Mirkin v. Wasserman, supra, at p. 1102, 23 Cal.Rptr.2d 101, 858 P.2d 568, quoting Bowden v. Robinson, supra, at p. 714, 136 Cal.Rptr. 871.) Unlike Mirkin, there is no overlap between statutory and common law remedies, and consequently there is no need to fear disturbing or displacing a legislative decision.
The second ground defendants advance for not recognizing plaintiffs cause of action echoes themes developed in Blue Chip Stamps v. Manor Drug Stores, supra, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539, where the United States Supreme Court held that the language of a federal securities statute required restricting Rule 10b-5 cases to those involving an actual sale or purchase of securities. Defendants cite this passage to illustrate the danger they see in litigation involving shareholders who, by holding their shares, are also not actual sellers or purchasers: "[A] putative plaintiff, who neither purchases nor sells securities but sues instead for intangible economic injury such as loss of a noncontractual opportunity to buy or sell, is more likely to be seeking a largely conjectural and speculative recovery...." (Id. at pp. 734-735, 95 S.Ct. 1917.) This is a perfect example of the perils of selective quotation. This is the complete context:
"While the damages suffered by purchasers and sellers pursuing a § 10(b) cause of action may on occasion be difficult to ascertain [citation], in the main such purchasers and sellers at least seek to base recovery on a demonstrable number of shares traded. In contrast, a putative plaintiff who neither purchases nor sells securities but sues instead for intangible economic injury such as loss of a noncontractual opportunity to buy or sell, is more likely to be seeking a largely conjectural and speculative recovery in which the number of shares involved will depend on the plaintiffs subjective hypothesis."
Plaintiffs situation does not present such a danger. Plaintiff is, after all, the owner of "a demonstrable number of shares." He alleged in the complaint that he "owned and held approximately 600 shares of Fritz common stock" throughout the "Relevant Period." This is therefore not, as the Supreme Court subsequently paraphrased Blue Chip Stamps, "litigation unconstrained by any such anchor in demonstrable fact, resting instead on a plaintiffs `subjective hypothesis' about the number of shares he would have sold or purchased." (Virginia Bankshares, Inc. v. Sandberg (1991) 501 U.S. 1083, 1092, 111 S.Ct. 2749, 115 L.Ed.2d 929.)[7]
What defendants fear most is that "under plaintiffs theory an entire universe of potential investors could state a class action fraud claim any time a stock price fluctuated. When stock prices went up, anyone could allege that they had elected not to purchase shares (or purchase more shares) based on a company's inadequately optimistic disclosures. If stock prices dropped, anyone could allege that they decided not to sell (or not to buy `put' options) based upon unduly optimistic disclosures." (Italics in original.) Defendants overstate. Plaintiff is not an "entire universe." Even if this does eventually become a class action, defendants will not *543 face "an entire universe of potential investors," but only those persons who actually owned the corporation's stock. And as for being hauled into court "any time a stock price fluctuated," this could only happen after the plaintiff(s) had decided to shoulder "`the formidable task of proving common law fraud.'" (Mirkin v. Wasserman, supra, 5 Cal.4th 1082, 1102, 23 Cal.Rptr.2d 101, 858 P.2d 568.) The plaintiff would not be "anyone," but someone who had already owned shares, not a "potential investor" but an actual investor. The plaintiff could not recover simply by pointing to a rise or fall in share price. Recovery could come only after a trier of fact concluded that: (1) the corporate issuer of those shares had made a misrepresentation; (2) the misrepresentation concerned a matter of fact, not opinion; (3) the misrepresentation was material to the shareholder's decision; (4) the misrepresentation was actually received by the shareholder; (5) the shareholder had relied on the misrepresentation; (6) the shareholder's reliance was justified; and (7) the misrepresentation was the proximate cause of damage to the shareholder. In no way is this a slam-dunk windfall for plaintiffs.
The logic of defendants' position would make California's common law fraud coextensive with liability for fraud under the Corporate Securities Law. Because no sale is involved, defendants face no statutory liability. They are trying to secure a like immunity from common law exposure. As the preceding discussion demonstrates, there is no logical or legal reason why defendants should be given such an exemption. Apart from the fact that the commodity of sale involved is corporate stock and not a motel, there is no real difference between this case and Halagan v. Ohanesian, supra, 257 Cal.App.2d 14, 64 Cal.Rptr. 792.
We are not blazing a new trail, but merely extending a trail already started. The application may be new, but the principle is not. Establishing an accommodation between the two is our business as a common law court. Experience may demonstrate that plaintiffs cause of action entails difficulties or defects that outweigh its utility. If so, the matter may be reexamined. Problems of proof are not a concern at the pleading stage. (E.g., Diamond Multimedia Systems, Inc. v. Superior Court, supra, 19 Cal.4th 1036, 1041, fn. 4, 80 Cal.Rptr.2d 828, 968 P.2d 539.) In the meantime, the matter is up to a jury. Massachusetts and New York have entrusted this issue to their juries for the greater part of a century. (Fottler v. Moseley, supra, 179 Mass. 295, 60 N.E. 788; Continental Insurance Co. v. Mercadante, supra, 222 A.D. 181, 225 N.Y.S. 488.) We have equal confidence in California juries.
The purported appeal from the order sustaining the demurrer is dismissed. The judgment is affirmed with respect to the third cause of action for violating Corporations Code section 1507. (See fn. 1, ante.) The judgment is reversed in all other respects. The parties shall bear their costs on appeal.
HANLON, P.J., and SEPULVEDA, J, concur.
NOTES
[1] Apparently based upon an April 1996 "Form 10-Q" filed with the Securities and Exchange Commission by the corporation and signed by the individual defendants, plaintiff alleged a cause of action for "Violation of California Corporations Code § 1507." This statute imposes liability on "officers, directors, employees or agents of a corporation" who, among other things, "[m]ake, issue, deliver or publish any prospectus, report, circular, certificate, financial statement, balance sheet, public notice or document respecting the corporation or its shares, assets, liabilities, capital, dividends, business, earnings or accounts which is false in any material respect...." While Mirkin v. Wasserman was pending before our Supreme Court, a federal district court concluded that this statute would be interpreted to impose a pleading requirement of actual reliance. (In re Verifone Securities Litigation (N.D.Cal.1992) 784 F.Supp. 1471, 1488.) The soundness of that prediction need not be explored at this time because plaintiff has presented no arguments concerning this cause of action in his briefs. We treat this omission as an abandonment of his appeal from the judgment of dismissal insofar as it sustains defendants' demurrer to this cause of action. (See, e.g., Owens v. Kings Supermarket (1988) 198 Cal.App.3d 379, 383, fn. 2, 243 Cal.Rptr. 627; Trailer Train Co. v. State Bd. of Equalization (1986) 180 Cal.App.3d 565, 576, fn. 6, 225 Cal.Rptr. 717.)
[2] In the complaint plaintiff also makes reference to a newspaper article and to numerous press releases disseminated by the corporation. It is clear from a careful reading that these secondhand misrepresentations do not have major significance; as shown by the allegations quoted above, the core of the causes of action at issue here is the April 2 document the corporation sent to its shareholders, which is the sole source of misrepresentations specifically alleged to have been received and relied upon by shareholders.
[3] Plaintiff states in his notice of appeal that he appeals from the order sustaining the demurrer. "An order sustaining a demurrer without leave to amend is not an appealable order; only a judgment entered on such an order can be appealed." (I.J. Weinrot & Son, Inc. v. Jackson (1985) 40 Cal.3d 327, 331, 220 Cal.Rptr. 103, 708 P.2d 682, original italics.) Here a judgment was entered, prior to the notice of appeal. In accordance with the policy requiring liberal construction of a notice of appeal in favor of its sufficiency (Cal. Rules of Court, rule 1(a)), plaintiff's notice will be construed as perfecting a valid and timely appeal from the judgment.
[4] Mercadante, although from New York's intermediate appellate court, has come to be treated as the most authoritative statement of the principle. (See, e.g., AUSA Life Ins. Co. v. Ernst and Young (2d Cir.2000) 206 F.3d 202, 212; Weinberger v. Kendrick (2d Cir.1982) 698 F.2d 61, 78; Marbury Management, Inc. v. Kohn (2d Cir.1980) 629 F.2d 705, 709.)
[5] Connecticut appears to be the only state that would take the contrary view. (See Chanoff v. U.S. Surgical Corp. (D.Conn.1994) 857 F.Supp. 1011, 1018 ["claims for damages based on the plaintiffs' failure to sell ... their stock are too speculative to be actionable" according to Connecticut's general principles of recovery].)
[6] None of these decisions involved corporate securities in any form. Halagan addressed the fraud issue in terms of substantial evidence, not the sufficiency of the underlying pleading. Carlson upheld a cause of action for specific performance, not fraud. And Pinney & Topliff did involve a cause of action for fraud based on California law that was tried in federal courts and lost on its merits, but there was no challenge to the fraud cause of action as alleged.
[7] Defendants also quote the concerns of concurring Justice Powell: "Proving, after the fact, what `one would have done' encompasses a number of conjectural as well as subjective issues: would the offeree have bought at all; how many shares would he have bought; how long would he have held the shares; were there other `buys' on the market at the time that may have been more attractive even had the offeree known the facts; did he in fact use his available funds (if any) more advantageously by purchasing something else?" (Blue Chip Stamps v. Manor Drug Stores, supra, 421 U.S. 723, 758, fn. 2, 95 S.Ct. 1917, 44 L.Ed.2d 539 (cone. opn. of Powell, J.).) Apart from the possible relevance of "how long would he have held the shares," these concerns have no relevance to plaintiff's situation of not selling a specific number of a specific stock.